**Dennis D. WHEELER, Appellant,**

v.

**The STATE of Texas.**

No. 815–99.

Court of Criminal Appeals of Texas, En banc.

Jan. 30, 2002.

Douglas M. Barlow, Beaumont, for Appellant.

Lisa Tanner, DA, Pro Tem, Matthew Paul, State's Atty., Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court, joined by MEYERS, KEASLER, HERVEY, and HOLCOMB, JJ.

On appeal from his conviction for aggravated sexual assault of a child, appellant contended that evidence of an extraneous sexual assault—elicited through the cross-examination of a Child Protective Services case-worker and the direct testimony of appellant's niece, S.S.—was inadmissible. The Court of Appeals agreed and reversed the conviction. *Wheeler v. State*, 988 S.W.2d 363 (Tex.App.-Beaumont 1999). Because we conclude that the trial court did not abuse its discretion in either the cross-examination of the defendant's witness, Ms. Brumley, or in allowing the State's rebuttal witness to testify, we reverse the Court of Appeals regarding these points of error and remand the case to the court of appeals only to address appellant's remaining points of error.

### I.

A jury convicted Dennis Wheeler of the aggravated sexual assault of S.E., a child of nine. The State's evidence showed that S.E. was a friend and classmate of appellant's daughter, Taylor. On two different occasions in 1995, S.E. spent the night at Taylor's house. According to S.E., appel-

lant sexually molested her on both occasions. The first time, he put his hand underneath her shorts as she sat on his lap and fondled her private parts as S.E. was watching a video in appellant's bedroom with appellant, his son, and a friend of his son. Taylor was taking a bath and appellant's wife was in another room. On the second occasion that S.E. spend the night, appellant came into Taylor's room to watch Taylor dance. While appellant and S.E. sat on the bed watching, appellant reached inside S.E.'s shorts and penetrated her female sexual organ with his finger. The jury found appellant guilty of the charged offense, and the judge, after hearing evidence of two other similar child molestation incidents, assessed his punishment at life imprisonment.

In his brief to the court of appeals, appellant's first point of error was: "Reversible error occurred when the trial court admitted evidence of an extraneous offense." Appellant complained that the direct testimony he elicited from Wanda Brumley, a CPS investigator, did not "open the door" to the State's cross-examination of Ms. Brumley concerning her knowledge of allegations of sexual assault against appellant by his niece (S.S.). He also complained that the niece's live testimony on rebuttal was inadmissible for any purpose.

The court of appeals held that Ms. Brumley's testimony on direct examination did not "open the door" to the State's cross-examination of her concerning allegations of another sexual molestation. It also held that the trial court should have excluded the niece's testimony under Rule 403, because the dangers of unfair prejudice substantially outweighed the probative value of this testimony to rebut the defensive theories presented. It further found that the trial court's error in admitting this evidence was harmful under Tex.

R.App. P. 44.2(b) and reversed the case for a new trial.

II.

■ Appellant called Ms. Wanda Brumley, a CPS case worker, as his third witness. Defense counsel established Ms. Brumley's credentials and that she had conducted a CPS risk assessment investigation of appellant after the present charges were filed to determine whether appellant posed a risk to his *own* two children remaining in the home. Counsel then asked:

Q.: And following your examination or your investigation, what determination was made?

A.: I did not validate. It was ruled out. I did not find any risk of abuse or neglect in the home. The child did not make outcry.

Q.: All right. Thank you. . . . We have no further questions.

Appellant was not on trial for molesting or abusing his own children. During the State's case-in-chief, no one had suggested that appellant had mistreated his own children in any way. Ms. Brumley's testimony was therefore irrelevant to any fact of consequence in this trial except to subtly bolster appellant's character through the following chain of inferences:

1. Ms. Brumley did not find any evidence that appellant had abused his own children;

2. Therefore, one could infer that appellant did not abuse his own children;

3. If appellant did not abuse his own children, one could infer that he is not the type to abuse children in general;

4. If appellant is not the type to abuse children in general, it is more likely

that he did not abuse S.E., the child complainant in this case.

Q.E.D.[1], appellant did not sexually assault S.E. Indeed, appellant's counsel suggested as much in his closing statement:

> She [Ms. Brumley] was doing her job, and she determined that that man created no risk. And she closed up that file. . . .
>
> And Wanda Brumley said she went out and investigated the household. And she was charged with the duty of protecting those children and said this is a no risk situation. And I'm folding my file.

I ask that you members of the jury follow what she said and find that this is indeed a no risk situation and that this family be left intact, that this man be found not guilty.

It appears, then, that the defense presented Ms. Brumley as a combination expert-investigator witness and subtle character witness.

Although appellant was entitled to proffer evidence of his good character (or propensity) for moral and safe relations with small children or young girls,[2] under Rule 404(a)(1)(A), he was required to do so in accordance with the procedures and foundations set out in Rule 405.[3] This he did

---

**1.** *Quod erat demonstrandum* ("which was to be demonstrated or proved").

**2.** Strictly speaking, good or bad character concerning "pedophilia" or "child sexual abuse" is not a true *character* trait, although one might certainly have a reputation in the community concerning these *conduct*-oriented traits or the more general character trait for "safe and moral treatment of children." *See, e.g., Valdez v. State,* 2 S.W.3d 518, 520 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd) (noting that "[t]o allow the defense to ask whether an accused in a sexual assault case has a reputation for being a pedophile is akin to asking a witness in a murder case if the defendant has a reputation for being a murderer. The status of being a murderer, or in this case a pedophile, is not a 'character trait.' In a murder case, the accused's reputation for peacefulness, or non-aggressive behavior, is the appropriate inquiry"); *compare Ibarra v. State,* 11 S.W.3d 189, 197–98 (Tex. Crim.App.1999) (trial court did not err in allowing testimony during punishment phase of appellant's "sexually inappropriate" conduct as character evidence); *Brewington v. State,* 802 S.W.2d 691, 692 (Tex.Crim.App. 1991) (treating testimony that defendant was a "fixated pedophiliac" as character evidence); *Wade v. State,* 803 S.W.2d 806, 808 (Tex.App.-Fort Worth 1991, no pet.) (court found that in drug possession case the fact that defendant had never possessed drugs "would be a pertinent trait and essential element of appellant's case"); *Thomas v. State,*

669 S.W.2d 420, 423–24 (Tex.App.-Houston [1st Dist.] 1984, pet. ref'd) (trial court erred in excluding testimony that defendant had good reputation in community for being a moral person and for safe and proper treatment of young children); *Foley v. State,* 172 Tex.Crim. 261, 356 S.W.2d 686, 687 (1962)(DWI defendant entitled to offer testimony of his character trait for sobriety); *Hamman v. State,* 166 Tex.Crim. 349, 314 S.W.2d 301, 303–05 (1958)(defendant charged with embezzlement entitled to offer testimony of character trait for honesty and fair dealing). *See generally,* 1 Steven Goode, et al., Texas Rules of Evidence: Civil and Criminal § 404.3 (noting that criminal defendant may offer evidence of any character trait pertinent to the charge; "[t]he use of 'pertinent trait' should not unduly restrict the defendant's use of this exception").

True character, in the context of Rule 405, means "a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness." Charles McCormick, Evidence § 195 (4th ed.1992); *see also* 1A John Wigmore, Evidence § 52, at 1148 (Tillers rev.1983).

**3.** First, appellant was required to lay a predicate that Ms. Brumley was familiar with appellant's reputation or the underlying facts upon which her opinion was based concerning this trait before the date of the offense. *See, e.g., Hernandez v. State,* 800 S.W.2d 523, 524–25 (Tex.Crim.App.1990) (noting that before either a character witness may testify to

not do. Because Ms. Brumley did not offer true character testimony under Rule 405, the State was not entitled to turn her into a character witness on cross-examination and then ask her questions concerning prior specific instances inconsistent with the particular character trait. The State may not convert a defense fact or expert witness into a character witness through its own cross-examination.[4]

However, the defense presented Ms. Brumley as a species of expert witness,[5] one who had conducted a CPS investigation and "did not find any risk of abuse or neglect in the home." Therefore, the State was entitled to cross-examine Ms. Brumley as it did for two independent but related reasons. First, the opposing party is always entitled to cross-examine an expert witness concerning the facts and data upon which that expert relied in forming her conclusion or opinion.[6] Once Ms. Brumley testified to her "determination," the State was entitled to inquire into the circumstances of that investigation, the mode under which she conducted her inquiry, the people she interviewed, and the materials upon which she relied.[7] The State was also entitled to question Ms. Brumley about information of which she was aware, but upon which she did *not* rely.

In the present case, the State specifically asked Ms. Brumley what information she relied on for her official report.[8] She responded, *inter alia,* that appellant told

---

reputation or opinion, the witness must have been familiar with the facts before the date of the offense). Second, Ms. Brumley could testify only to her opinion concerning this character trait or appellant's general reputation in the community concerning this trait. Tex.R. Evid 405(a). *See, e.g., Lancaster v. State,* 754 S.W.2d 493, 495 (Tex.App.-Dallas 1988, pet. ref'd) (noting that a character witness must testify in the form of either opinion or reputation); *Hunt v. State,* 779 S.W.2d 926, 928 (Tex.App.-Corpus Christi 1999, *pet. ref'd* ).

4. *See Els v. State,* 525 S.W.2d 11, 14 (Tex. Crim.App.1975) ("[t]he State may test a character witness with proper 'have you heard' questions, but it may not transform, by its own questions, a witness who is not a character witness into one in order to be able to ask 'have you heard' questions"); *see also Hatley v. State,* 533 S.W.2d 27, 29 (Tex.Crim.App. 1976) (holding that State may not rely on its own questioning as an invitation to rebuttal concerning character of victim); *see generally, Bishop v. State,* 869 S.W.2d 342, 345 (Tex. Crim.App.1993) ("the State may not rely on its own questioning as an invitation to rebuttal").

5. Ms. Brumley, who had no first-hand knowledge of the facts but who was professionally qualified to undertake investigations and draw conclusions from that inquiry, testified as an expert witness even though she was not

explicitly presented as such. *See* Tex.R. Evid. 702–705.

6. Tex.R. Evid. 705(a). This rule reads:

(a) Disclosure of Facts or Data. The expert may testify in terms of opinion or inference and give the expert's reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data.

7. *See, e.g., Nenno v. State,* 970 S.W.2d 549, 564 (Tex.Crim.App.1998) (concluding that State was entitled to cross-examine capital murder defendant's expert witness concerning contents of report made by expert's colleague who had interviewed defendant about crime when that witness relied upon report in forming his own opinion).

8. At trial the prosecutor explained:

Since [Ms. Brumley] has given an opinion as a person who has done over 100 CPS investigations, the State is allowed to go into the basis for that opinion. And whether or not that is admissible or not, the basis of that opinion is something that we can go into and that's exactly what we are doing. If there is information out there that she acted on or didn't act on, that's something we are entitled to go into.

her "that he love[d] both of his children very much and would never hurt them or anyone else."[9] When asked whether she had received information that appellant may have molested his niece several years earlier, Ms. Brumley stated that a law enforcement officer had told her "something like that," but it was hearsay. She stated that she might have asked appellant or his wife about it, but she made no attempt to investigate that incident or contact the child. She closed her file. When asked if she would have changed her opinion had she been able to verify the earlier molestation, Ms. Brumley stated that she "possibly" would change her opinion that appellant was not a risk.

■ This was permissible cross-examination into the basis for an expert witness's opinion.[10] An opposing party is entitled to ask an expert witness if her opinions or determinations would change if the data upon which she relied changed.[11] Thus, the trial court did not

9. At this point, appellant objected that the State was setting up its own impeachment device to get into the extraneous offense concerning S.S. and the trial court wisely held a hearing outside the jury's presence. The State relied, in part, upon *Creekmore v. State*, 860 S.W.2d 880, 883 (Tex.App.-San Antonio 1993, pet. ref'd), which had held that when a defense expert testifies to her opinion that the defendant "does not fit her profile as an abuser," the State was entitled to cross-examine this witness about what the defendant had told her, which was: "He said he is not [a pedophile]. He says he has never sexually molested anyone." *Id.* This testimony, explaining the basis of her expert's opinion, along with other impeachment devices by which the defense suggested that the child was jealous, that she told lies, that her testimony was contradicted by defense witnesses, that perhaps her mother was a lesbian, and that the child and her mother watched x-rated movies, was sufficient impeachment to permit the admission of three extraneous offenses. *Id.*

The situation in *Creekmore* closely resembles the present one. Appellant vehemently denied that he had "opened the door" as did the defense in *Creekmore*, because he did not elicit an opinion from Ms. Brumley that appellant was not a pedophile. True enough, but the only relevance of Ms. Brumley's opinion was the implicit inference that appellant was not the type to commit child sexual abuse. A subtle spice nonetheless has a distinct flavor. Ms. Brumley's opinion testimony, though subtle, is distinct.

10. *See Ramirez v. State*, 815 S.W.2d 636, 650 (Tex.Crim.App.1991) (noting that an expert is required to disclose the facts or data underlying his opinion on cross-examination; "[d]is-closing this information enables the jury to evaluate the expert's opinion and ascertain the weight it wishes"); *see also United States v. Whitetail*, 956 F.2d 857, 861-62 (8th Cir. 1992) (when defendant in murder trial offered expert testimony that she suffered from battered woman's syndrome, prosecutor entitled to ask about prior fights where she was aggressor); *United States v. Wright*, 783 F.2d 1091, 1100-01 (D.C.App.1986) (prosecutor could ask defense expert psychiatrist whether defendant said he "would do anything for money" to allow jury to scrutinize expert's reasoning behind opinion); *United States v. Gillis*, 773 F.2d 549, 553-54 (4th Cir.1985) (when defendant introduced expert testimony that he suffered from "pathological gambling disorder," court properly permitted prosecutor to cross-examine expert on defendant's prior car theft, kidnapping, and carrying weapon).

11. *See Nenno v. State*, 970 S.W.2d at 563-64 (prosecutor could cross-examine defense expert with hearsay information to undermine expert's opinion "by showing that he relied upon specific statements made by appellant to formulate that opinion despite other information (upon which he also claims to have relied) that shows appellant telling a different story"); *Pyles v. State*, 755 S.W.2d 98, 118 (Tex.Crim.App.1988) (in cross-examination of expert, opponent may "secure the expert's opinion upon a different set of facts assumed by the opponent in accordance with his own theory of the case"); *Moranza v. State*, 913 S.W.2d 718, 727-28 (Tex.App.-Waco 1995, pet. ref'd) (State could use hearsay statements in psychiatric report to impeach defense expert when State was challenging basis for expert's conclusion that defendant was insane

abuse its discretion in permitting the State to inquire fully into the basis of Ms. Brumley's professional opinion. It is true that this cross-examination would not, by itself, have opened the door to extrinsic evidence of the extraneous misconduct, but it certainly did allow a full inquiry into facts and data upon which Ms. Brumley relied and her explanation as to why she did not rely upon other information.

▮▮▮ The State's cross-examination was also permissible to correct the false impression that Ms. Brumley's testimony clearly left with the jury concerning appellant's risk of abuse. When a witness presents a picture that the defendant is not the type of person to commit the charged offense, the prosecution may impeach that witness' testimony by cross-examining the witness concerning similar extraneous offenses.[12] By raising the defensive theory that appellant posed no risk of abuse, appellant (through Ms. Brumley) opened the door for the State to cross-examine her regarding an extraneous offense if the ex-

traneous offense would tend to correct the false impression left by the witness' direct examination testimony.[13] The evidentiary caveat, however, is that the opponent must correct the "false impression" through cross-examination of the witness who left the false impression, *not* by calling other witnesses to correct that false impression.

As a general rule, the defensive theory that the State wishes to rebut through the use of extraneous offense evidence must be elicited on direct examination by the defense and may not be elicited by "prompting or maneuvering" by the State.[14] As noted above, appellant did not overtly present Ms. Brumley as a character witness, and she did not overtly testify to appellant's character for moral and safe conduct around children. However, because her testimony was relevant only for the inference that appellant was the type of person who did not pose a risk of abuse around children, the State was entitled to rebut that "false impression" inference with cross-examination questions concern-

at time of offense in effort to show expert might have reached different conclusion if he had been aware of additional information in report).

12. *See McIlveen v. State,* 559 S.W.2d 815, 822 (Tex.Crim.App.1977). In *Townsend v. State,* 776 S.W.2d 316, 317 (Tex.App.-Houston [1st Dist.] 1989, pet. ref'd), the court of appeals faced an analogous situation. There, the defendant was charged with sexually abusing two young girls. He testified and denied that he had any sexual contact with either child. He also called a psychiatrist to testify that "based on his interview with and testing of appellant, it was his expert medical opinion that appellant's psychological profile was not typical of individuals who commit sexual crimes." *Id.* This expert testimony, which was a species of subtle character evidence, opened the door to the State calling two witnesses in rebuttal who testified that he had abused them several years earlier. The court of appeals held that evidence of "the two

extraneous offenses [was] admissible to controvert the false impression left by appellant that he was not the type of person who would commit a sexual offense against a child, and that he was simply the innocent victim of the children's anger and their overactive imagination." *Id.* at 318.

13. *See Bell v. State,* 620 S.W.2d 116, 126 (Tex.Crim.App.1980); *Anderson v. State,* 896 S.W.2d 578, 579 (Tex.App.-Fort Worth 1995, pet. ref'd) (by offering minister's testimony that appellant was a "good candidate" for probation, appellant "opened the door" to rebuttal evidence about a specific bad act of indecent exposure). As a general proposition, when a party introduces matters into evidence, he invites the other side to reply to that evidence. *Kincaid v. State,* 534 S.W.2d 340, 342 (Tex.Crim.App.1976).

14. *See Shipman v. State,* 604 S.W.2d 182, 185 (Tex.Crim.App.1980); *Mares,* 758 S.W.2d at 936.

ing allegations of similar misconduct toward another child.[15]

## III.

■ During its rebuttal case, the State called appellant's niece, S.S., to testify to the incident which had occurred some nine years earlier. S.S. testified that, when she was six years old, she had gone to the lake with appellant and his family. She was playing in the water with appellant and his son. Both children were in water above their heads and hanging on to appellant's arms. As appellant's son began to swim away, appellant put his hands inside S.S.'s bathing suit and touched her "female organ." S.S. said that she immediately pulled his hand out and swam away. She eventually told her mother and her mother told appellant's wife. No charges were filed, however, because they did not want to "break up the family."

The court of appeals held that the trial court abused its discretion under Rule 403 in allowing S.S.'s testimony, because the defense had not "opened the door" to extraneous offense character evidence by sponsoring Ms. Brumley's testimony.[16] Indeed, that is true. As noted above, Ms. Brumley's testimony opened the door for the State to cross-examine her only regarding data that she either relied upon or rejected. The court of appeals also concluded that "any probative value to the State of the extraneous offense testimony was substantially outweighed by the obvious prejudicial effect such evidence would have on Wheeler under the circumstances then existing in the guilt/innocence phase of the trial." The court of appeals focused solely upon the probative value of the extraneous offense to rebut Ms. Brumley's testimony,[17] but failed to acknowledge or discuss the State's other reasons for calling S.S. to testify. The State *also* offered S.S.'s testimony to rebut the various defensive theories regarding Mr. Wheeler's innocence,[18] and not simply to correct any

15. Of course, the State was required to have a "good faith" basis for the questions and be prepared to produce documentary evidence or a witness (outside the presence of the jury) to testify to them. *See, e.g., Starvaggi v. State,* 593 S.W.2d 323; 328 (Tex.Crim.App.1979) (prosecutor must have a "good faith belief that the act actually occurred"); *Stone v. State,* 583 S.W.2d 410, 416 (Tex.Crim.App. 1979).

16. While "[e]vidence of a person's character or character trait is not admissible for the purpose of proving action in conformity therewith on a particular occasion," the accused *in a criminal case may place his* character in issue by offering evidence of his good character. Rule 404(a)(1)(A). By placing his character in issue, however, the accused "opens the door" for the State to rebut evidence of his good character with its own evidence of the accused's bad character. On cross-examination, the State may test the character witness' familiarity with the defendant's character or demonstrate that the witness has a low standard for what he considers good character by inquiring into prior specif-

ic instances of conduct that are inconsistent with the particular character trait, but the State may not offer extrinsic evidence regarding the prior incidents solely to show the character witness is "wrong" in his opinion. Rule 405(a).

17. While noting that the State contended that the rebuttal testimony was admissible "to rebut several different defensive theories and strategies," the court of appeals never discussed them. In examining the State's need for the extraneous offense, the court focused solely upon its value "to rebut Wheeler's false impression evidence" and concluded that "[i]t would have been a simple matter to discredit Brumley's conclusion that Wheeler's children did not need to be removed from the home by attempting to develop the fact that her investigation was somewhat cursory at best."

18. "Evidence of extraneous offenses committed by the accused has been held admissible ... to refute a defensive theory raised by the accused." *Albrecht v. State,* 486 S.W.2d 97, 101 (Tex.Crim.App.1972); *see also Crank v. State,* 761 S.W.2d 328, 341 (Tex.Crim.App.

false impression left by Ms. Brumley. "[T]he same extraneous acts, though inadmissible as propensity evidence, may be admissible under a proper analysis and a proper rationale. Extraneous sex offenses were and are still admissible if they fall into one of the proper 'exceptions' to the 'general rule' barring their admission."[19]

The defense's position was very clear from the beginning of this case. Defense counsel stated in his opening:

There was not a time when Dennis Wheeler and [S.E.] were alone, which is exactly what the State has told you they expect to prove. We expect to show you that there was no such time and that there was no touching. It [sic] was no contact whatsoever as between this man and his friend—his little girl's friend. . . .

And we expect to show you that the idea that this man while his nine-year old daughter was standing as close to me to this right here, that this man would have sexually abused his daughter's friend, that is absurd.

The defensive theories were essentially that appellant was never alone with S.E., and therefore lacked an opportunity to abuse her, or alternatively, that it would have been impossible for appellant to abuse her in a room full of people.[20] Defense counsel called numerous witnesses to testify to appellant's lack of opportunity to sexually molest S.E., including appellant's wife, his son, his son's friend who was present during one of the incidents, his daughter, and appellant himself. Moreover, appellant suggested that he was the victim of a conspiracy or frame-up motivated by greed. Appellant noted that S.E.'s father and his wife had filed a lawsuit against appellant and argued that S.E. made up (or was duped into making) these allegations for profit.

S.S.'s testimony served to rebut these defensive theories. Her testimony was relevant to rebut appellant's theory of lack of opportunity or impossibility, because the prior offense occurred with family members in the immediate vicinity and appellant's son only a few feet away.[21] S.S.'s testimony further served to contradict appellant's "frame-up" theory by showing appellant's prior misconduct (very similar to that for which he was charged in the present case) in circumstances involving neither money nor revenge as possible motives.[22] Lastly, the prosecutor stated that

1988) ("[p]robably the most common situation which gives rise to the admission of extraneous offenses is in rebuttal of a defensive theory").

19. *Boutwell v. State,* 719 S.W.2d 164, 179 (Tex.Crim.App.1985).

20. One of defense counsel's first statements during closing argument was: "And yet the State is here asking you to believe that he was there diddling with this little girl or however you want to put it, right there in front of his children."

21. Evidence of an extraneous offense to rebut a defense of "lack of opportunity" or "impossibility" is admissible under Rule 404(b). *See, e.g., Powell v. State,* 63 S.W.3d 435, 438 (Tex.Crim.App.2001) (extraneous offenses with other children may be admissible when defen-

dant claimed that he lacked any opportunity to commit sexual abuse because many children were always in the same room); *Abshire v. State,* 62 S.W.3d 857, 860 (Tex.App.-Texarkana 2001, n.p.h.) (extraneous offense evidence was admissible in child sexual assault case when defense was lack of opportunity to commit offense and all of defendant's family members testified that they never saw defendant do anything unusual with child complainant).

22. An extraneous offense may be admissible to rebut the defense in a child sexual assault case that the defendant is the innocent victim of a "frame-up" by the complainant or others. In such a situation, the extraneous misconduct must be at least similar to the charged one and an instance in which the "frame-up" motive does not apply. *See Boutwell,* 719

evidence of the earlier incident demonstrated how quickly appellant could have accomplished his illicit purpose, which was also relevant to rebut appellant's defense that he lacked opportunity. Thus, although S.S.'s testimony regarding appellant's abuse would have been inadmissible character evidence if offered to prove that appellant acted in conformity therewith in the present case, her testimony was relevant for several permissible purposes.

■■■ The trial court abused its discretion in admitting S.S.'s otherwise relevant and admissible testimony *only* if the danger of unfair prejudice substantially outweighed the probative value of her testimony.[23] The trial court's ruling must be upheld so long as it is "within the zone of reasonable disagreement."[24]

■■ The trial court should consider several factors in determining whether the prejudicial effect of evidence substantially outweighs its probative value under Rule 403. These factors include:

1. how compellingly evidence of the extraneous offense serves to make a fact of consequence more or less probable;

2. the extraneous offense's potential to impress the jury in some irrational but indelible way;

3. the trial time that the proponent will require to develop evidence of the extraneous misconduct; and

4. the proponent's need for the extraneous transaction evidence.[25]

Here, the State needed to show that the offensive touching actually occurred, which was a hotly contested issue. This Court has recognized that in prosecutions for sexual offenses, a successful conviction "often depend[s] primarily on whether the jury believe[s] the complainant, turning the trial into a swearing match between the complainant and defendant."[26] Because numerous witnesses testified to appellant's lack of opportunity to sexually molest S.E., the rebuttal testimony by S.S. provided, at a minimum, the "small nudge"[27] towards contradicting appellant's defensive theories and towards proving that the molestation did indeed occur. S.S.'s testimony showed an event quite similar to the charged event: the defendant reaching underneath a young girl's outer clothing and touching her private parts while another family member was close by.[28]

S.W.2d at 179 (extraneous offense evidence in child sexual assault cases may be admissible to rebut contention that "defendant was being framed by the witnesses"); *Johnston v. State*, 418 S.W.2d 522, 527 (Tex.Crim.App.1967) (extraneous acts of sodomy with other boys admissible to rebut defense of "frame-up").

23. Tex.R. Evid. 403.

24. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990); *see also Rodda v. State*, 745 S.W.2d 415, 418 (Tex.App.-Houston [14th Dist.] 1988, *pet. ref'd*) (stating that greater than usual deference should be given to trial court's discretion in admitting or excluding extraneous offense).

25. *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim.App.1996). The court of appeals based its reversal under Rule 403 on the fourth

factor, the State's need for the evidence. Therefore we will not consider the other three factors here, although they, too, support the admissibility of S.S.'s testimony.

26. *Boutwell*, 719 S.W.2d at 177–78.

27. *Montgomery v. State*, 810 S.W.2d at 381.

28. Appellant admitted that the incident with S.S. did, in fact, occur but it was an "accidental" touching. There was no suggestion that S.S. had any motive to fabricate or "frame" the appellant and she had no pecuniary motive. S.S.'s total lack of a financial motive tended to rebut the defense that S.E.'s similar story of molestation was fabricated for purposes of greed.

In this case, the trial court could reasonably conclude that the State had a great need for rebuttal evidence to counteract the small parade of appellant, his family, his son's friend, and a CPS investigator, who testified, in essence, that appellant is not the type to abuse children and did not and could not have done so on these two occasions. One little girl said the events did occur.[29] She was pitted against six defense witnesses whose testimony asserted or implied the events did not occur and that the motive for S.E.'s testimony was money from a civil lawsuit.

While evidence of an extraneous sexual offense will always carry emotional weight and the danger of impressing the jury in an irrational and indelible way, our rules of evidence require the exclusion of relevant evidence only if the danger of unfair prejudice, delay, or needless repetition substantially outweighs the probative value. We conclude that the trial court's decision to admit the extrinsic extraneous offense in this case fell within the zone of reasonable disagreement and thus was not an abuse of discretion. Accordingly, we affirm the trial court's admission of S.S.'s testimony, uphold the cross-examination of Mrs. Brumley as proper under the rules of evidence, and remand the case to the court of appeals to address appellant's remaining points of error.

KELLER, P.J., filed a concurring opinion and joined Part III of the Court's opinion.

WOMACK, J., filed a dissenting opinion, joined by PRICE and JOHNSON, JJ.

---

**29.** The doctor who examined S.E. testified that there was no medical evidence of penetration.

**1.** *Montgomery v. State,* 810 S.W.2d 372, 378 (Tex.Crim.App.1990).

KELLER, P.J., filed a concurring opinion.

As to the State's cross-examination of Brumley about specific instances of child abuse engaged in by appellant, there is a much more explicit basis for admitting the testimony than that given in the Court's opinion: the evidence constitutes proper rebuttal testimony under Rule 404(a)(1)(A).

Texas Rule of Evidence 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

Rule 403 renders evidence inadmissible only when the prejudice involved is "unfair."[1] " 'Unfair' prejudice means an 'undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.' "[2] The extraneous offense evidence in the present case was unquestionably prejudicial. The real issue is whether the prejudice involved was the kind that suggested an improper basis for decision, and if so, whether the improper basis for decision suggested by the evidence substantially outweighed the legitimate probative value of the evidence (i.e. the fair prejudice created by the evidence).

The Court of Appeals's opinion makes the erroneous assumption that appellant's character is an improper basis for decision. "[E]vidence of an extremely similar extraneous offense always carries the potential to impress the jury with an accused's character conformity, an impression the law seeks to avoid."[3] The Court of Appeals's

---

**2.** *Id.*

**3.** *See Wheeler,* 988 S.W.2d at 369.

opinion and the State's brief before that court assume that the evidence in question was admissible under Rule 404(b).[4] That rule justifies the admission of evidence for a non-character purpose. If, however, the evidence in this case was admissible under a different rule that justifies admission of evidence for the purpose of showing character, then the prejudicial effect of the evidence could not be deemed unfair simply because the evidence tends to show bad character.

### Rule 404(a)(1)(A)

One rule by which evidence is admitted to show character (as opposed to a non-character purpose) is Texas Rule of Evidence 404(a)(1)(A). That rule permits a criminal defendant to introduce evidence of a pertinent character trait in order to prove action in conformity with that trait.[5] Rule 404(a)(1)(A) provides:

Evidence of a person's character or character trait is not admissible for the purpose of proving action *in conformity therewith* on a particular occasion, *except:*

(1) Character of Accused. Evidence of a pertinent character trait offered:

(A) by an accused in a criminal case, or by the prosecution to rebut the same.

(emphasis added).

### Rule 405(a)

The rules limit the types of evidence that may be used to prove character. Even under Rule 404(a)(1)(A), character evidence may take the form of reputation or opinion only, with one exception: when evidence of a character trait is presented, the adverse party may inquire on cross examination into specific instances of con-

duct under Rule 405(a). Rule 405(a) provides:

In all cases where testimony is admitted under this rule, on cross-examination inquiry is allowable into relevant specific instances of conduct.

What is still prohibited, even under Rule 404(a)(1)(A), is extrinsic evidence of specific instances of conduct.

### Rule 403

The differences between Rule 404(b) and Rule 404(a)(1)(A) significantly affect the analysis to be conducted under Rule 403. Character is an improper purpose under Rule 404(b) but not under Rule 404(a)(1)(A). Since the very purpose of Rule 404(a)(1)(A) is to show character, and Rule 405(a) contemplates cross-examination about specific instances of conduct, a party must do far more than simply point to the evidence's tendency to show character to establish "unfair" prejudice under Rule 403.

### Brumley's Testimony

As the Court recognizes, Brumley's testimony, offered by appellant, had probative value for only one purpose: as evidence of appellant's good character for not being a child molester. By introducing a CPS worker's opinion that appellant posed no risk of abuse or neglect in the home, appellant undoubtedly intended to incline the jury to draw the inference that he was not the kind of person who would molest children. In doing so, Rule 404(a)(1)(A) was implicated and the defense testimony opened the door to an inquiry, on cross-examination, into specific instances of bad conduct relevant to the issue of whether he was a child molester.

---

**4.** *Id.* at 368.

**5.** *See* Rule 404(a)(1)(A).

The Court correctly observes that Brumley's direct examination testimony was in fact inadmissible. Brumley was not qualified, under Rule 405(a), to give an opinion on appellant's character because her opinion was not based upon facts she knew prior to the offense: "In a criminal case, to be qualified to testify at the guilt stage of trial concerning the character or character trait of an accused, a witness must have been familiar with the reputation, or with the underlying facts or information upon which the opinion is based, prior to the day of the offense."[6] The Court then contends that, because the defense testimony on direct examination was inadmissible, the State was not authorized to rebut that testimony under the rules.

But Rule 405(a) does not say the predicate testimony must be *admissible* to authorize inquiry into specific instances on cross-examination—just that the predicate testimony was *admitted* under the rule. By not objecting, the State procedurally defaulted the question of Brumley's qualification to give character testimony. Having successfully admitted good character testimony, appellant opened the way for an inquiry by the State on cross-examination into relevant specific instances of conduct. The State's cross-examination of Brumley on the extraneous offense against S.S. falls squarely within Rule 405(a)'s authorization for such an inquiry. The Court says that "The State may not convert a defense fact or expert witness into a character witness through its own cross-examination." But Brumley was not a fact witness, and while she may have been an expert witness, her "expert" testimony was relevant *only* to

show appellant's good character. The State did not *convert* Brumley into a character witness; the defense introduced her as one at the outset.

I join Part III of the Court's opinion and otherwise concur in the judgment.

WOMACK, J., filed a dissenting opinion in which PRICE and JOHNSON, JJ., joined.

The Court, as I understand its opinion, reverses the court of appeals' judgment for five reasons: It was proper for the State to cross-examine the CPS worker about her lack of knowledge of an extraneous offense (1) because she was an expert witness,[1] and (2) to correct a false impression.[2] It was proper for the State to introduce the testimony of the victim of the extraneous offense (3) to rebut the defense theory of lack of opportunity[3] and (4) to rebut the defensive theory of frame-up,[4] and (5) the prejudicial effect of the victim's evidence did not substantially outweigh "the State['s] need[] to show that the touching actually occurred"[5] and "to counteract the small parade" of defense witnesses.[6]

I haven't much quarrel with the first holding, about testing the basis of the quasi-expert's knowledge. I may not agree with all the dicta in the footnotes.

I do not agree with the holdings about the testimony of S.S., the extraneous-offense victim. Evidence that a person could fondle a child's genitals that were under the water of a lake, where no one could see the touching, has little to do with its being possible to fondle a child in a

---

**6.** Rule 405(a).

**1.** *See ante,* Part II at 3–8 at 881–85.

**2.** *See id.* at 8–9, at 885–86.

**3.** *See ante,* Part III at 11–12, at 887–88.

**4.** *See ibid.*

**5.** *Id.* at 13, at 888.

**6.** *Id.* at 14, at 889.

bedroom where other people who were present could see the touching. Evidence that one person who did not report the extraneous offense did not seek financial gain by reporting, in no way disproves that the person who did report this offense had motivations of financial gain.

As for the need for the evidence, I wish to make two points. First, in the balancing test between probative value and prejudicial effect, the Court assigns probative value to the fact that the appellant is the kind of person who commits child abuse.[7] As I understand the law, this is the improper, prejudicial feature of the evidence, not its legitimate value to prove another fact. Second, if the scales are tipped to admissibility because the State has only the victim as a witness while the defendant had more witnesses to be rebutted, they'll be tipped most of the time. And if they can be tipped because there was "a hotly contested issue" whether "the offensive touching actually occurred," [8] they will tip in every case where the plea is Not Guilty.

I would not disturb the court of appeals' holding on the evidence from S.S., which would make it unnecessary to reach the issue of the CPS's worker's evidence. I respectfully dissent.

---

7. Id. at 9, at 885 (referring to the State's great need to rebut evidence "that appellant is not the type to abuse children," with what must be evidence that he is such a type because he did so before).

