**Opinion issued October 9, 2003**



In The

*Court of Appeals*

For The

*First District of Texas*

————————

NO. 01-02-01182-CR

————————

**JONATHAN JUDGE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Cause No. 912141**

**MEMORANDUM OPINION**

Appellant, Jonathan Judge, was indicted for the offense of murder. A jury found appellant guilty and assessed his punishment at 60 years' confinement. In one issue, appellant claims that the court erred by admitting extraneous-offense evidence

that appellant possessed a gun prior to the murder. We affirm.

## Background

Michelle Millare and appellant dated for about one and one-half years. On the day Michelle disappeared, appellant and Michelle each visited the home of Michael and Jamira Foster. Appellant took his car to Michael for repair of the radiator. Michelle arrived separately in her 4Runner to visit Jamira. While Michelle was in the apartment with Jamira, the two men sat inside appellant's car and talked.

During their discussions, appellant displayed a .25-caliber gun and asked Michael if he had bullets for it. Michael claimed that he did not. Appellant opened the gun's clip, causing Michael to notice bullets in the clip. Appellant asked Michael whether the gun would kill if appellant used it to shoot someone in the head, and Michael responded that it could. Michael left appellant, went into his apartment, and called Michelle to appellant's car at appellant's request.

After he had been in his apartment for 15 to 30 minutes, Michael walked outside and saw that Michelle and appellant were still together inside appellant's car. Michelle was sitting on appellant's lap, hugging and kissing him. Later that afternoon, Jamira saw Michelle leave in her 4Runner, with appellant following in his car.

When Michelle did not come home that night, her family called her cell phone,

2

pager, and friends in an attempt to locate her, and reported Michelle's disappearance to the police. Her family discovered that Michelle's ATM card was used to withdraw money on the night she disappeared. When Michelle's father spoke to Michael, Michael said that Michelle and appellant had been at his apartment on the night she disappeared. Appellant, however, claimed that he had not seen Michelle for months.

Michelle's brother found her 4Runner parked at McGregor Park when he was posting flyers one day. Dried blood was found on the passenger seat, console and floorboard. Her burned body was found on a dirt road near Lake Houston, and an autopsy was conducted. The autopsy revealed that Michelle had died from a contact gunshot wound to her head caused by a .25 caliber bullet and that her body had been burned with diesel fuel.

During the police investigation, officers went to the gas station nearest to the location where Michelle's body was found and spoke with Patricia Foster. Foster told police officers that she saw a green 4Runner pulling up to the diesel pump on the night Michelle was discovered missing. According to Foster, appellant entered the store, paid a few dollars for diesel fuel, and pumped the fuel, but Foster did not know whether appellant put the fuel into a container or a vehicle. She saw the 4Runner leave in the direction of the site where Michelle's body was found.

Officers obtained a warrant, arrested appellant, and received a written

3

statement from him. In the statement, appellant said that he had seen Michelle at the Fosters' apartment, they separated at 3:00 P.M., and they reunited at 6:00 P.M. In a written statement, appellant claimed that Michelle drove him to an ATM machine and withdrew $140, which she gave to him. According to appellant, Michelle dropped him off at a store near his home, and he spent the remainder of the night having his hair braided and playing basketball. Contrary to appellant's written statement, two inmates incarcerated with appellant at the Harris County Jail, testified at appellant's trial that appellant told them that he shot the victim in the head, burned the body with diesel fuel, and urinated on it.

## Extraneous Offense Evidence

In his sole point of error, appellant contends that the trial court erred in admitting evidence of an extraneous offense because it was not probative of any issue in the case and was unduly prejudicial in defending his charge of murder by firearm. A single question and answer posed to Michael Foster during the State's re-direct examination is the subject of this appeal:

| Question by State: | Prior to February 20th, had you seen the defendant, Jonathan Judge, with a different gun than the one you saw him with on February 20th? |
|---|---|
| Answer: | Yes, he had a – |
| Question: | That's okay. Thank You. |

4

In overruling appellant's trial objection, the court conducted a balancing test, found that the evidence was more relevant than prejudicial, and ruled that the evidence was admissible to correct a false impression that Michael would have been alarmed at seeing appellant in possession of a gun and would have immediately contacted the police.

An appellate court reviewing a trial court's ruling on the admissibility of evidence applies the abuse-of-discretion standard of review. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). The appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* All relevant evidence is admissible unless its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. Evidence that is otherwise inadmissible may be admitted to correct a false impression left by the questioning of a witness. *Wheeler v. State*, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002).

To understand the trial court's ruling, it must be examined in the context of the evidence introduced at appellant's trial. During direct examination by the State, Michael testified that appellant showed him a gun and asked him if he had bullets for it. Michael denied having any. Appellant asked Michael whether the gun could kill someone, and Michael responded that it could. Michael further testified that when Michelle's father called looking for his daughter, he said that he last saw Michelle

with appellant. During cross-examination of Michael, appellant's attorney attempted to establish that Michael was not telling the truth about appellant's request for bullets because bullets would be unnecessary if the gun's clip already contained bullets. Appellant's attorney suggested it would have been nonsensical for appellant to ask, "Would this gun kill somebody if I shot them in the head?" because the answer to such a question is obvious. Appellant's attorney further established that Michael admitted that he never mentioned the gun or the statements made by appellant about the gun to Michelle's father when he called looking for Michelle.

The State contends that appellant's cross-examination left a false impression with the jury that Michael would have been alarmed at seeing appellant with a gun, would have notified the police, and would have told Michelle's father about the gun when he called. The State further contends that the evidence that Michael saw appellant in possession of a gun before Michelle's disappearance explains appellant's lack of reaction to seeing appellant in possession of a gun on the night of Michelle's disappearance.

We conclude that the trial court did not abuse its discretion in admitting the testimony of appellant's previous gun possession. The State was limited to testimony in a single question and answer. No details of the previous possession were introduced, and no mention was made of the type of firearm in the previous

possession, or whether the possession was legal or illegal. Finally, no correlation was shown between the type of firearm appellant was previously seen possessing and the firearm he carried on the night of Michelle's disappearance. We conclude that the court did not abuse its discretion in ruling that the probative value of the evidence to correct a false impression outweighed any prejudicial effect of the evidence.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Elsa Alcala
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Alcala.

Do not publish. Tex. R. App. P. 47.4.