In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-01-00212-CR
______________________________


JESS WILLARD MATTOX, SR., Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 19720


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            Jess Willard Mattox, Sr., appeals from his conviction by a jury for the offense of aggravated
sexual assault on a child. The jury assessed his punishment at sixty years' imprisonment. Mattox
contends that the admission of the testimony of C.H. and Donetta Britt at the guilt/innocence phase
of the trial about Mattox's prior bad sexual acts was reversible error and that the trial court abused
its discretion by refusing to permit him to reopen his case after closing. 
            Mattox was indicted for having sex with a minor girl. The complainant, S.B., testified that,
on two consecutive days while she was home sick, Mattox (her stepfather) came home around noon,
ordered her to remove her clothes, and had sexual intercourse with her. There was no objective
evidence of the crime. After making the allegation, S.B. moved in with Edith Coker. Coker testified
S.B. recanted her story, and a letter written by Michelle Hodge was introduced into evidence, which
also stated S.B. had recanted her allegation. 
            During the presentation of the State's case, the State introduced testimony from C.H., a minor
girl and friend of S.B., that Mattox had attempted to talk her into, or pay her to engage in sex. After
the defense presented its case, Britt testified as a rebuttal witness


 that, several years earlier, while
she was a minor, Mattox and several other men had sex with her. 
            Mattox argues that the trial court committed reversible error by admitting evidence of
extraneous offenses. We first address the admission of the testimony of C.H. The admission of
extraneous-offense evidence is reviewed under an abuse of discretion standard. Rankin v. State, 974
S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on reh'g). If the trial court admits the evidence in light
of the factors enunciated in Montgomery v. State, 810 S.W.2d 372 (Tex. Crim. App. 1990), and the
court's decision to admit the evidence is "within the zone of reasonable disagreement," the trial
court's decision will be upheld. Rankin, 974 S.W.2d at 718.
            C.H. initially testified about an incident where Mattox had come into a bedroom with her and
S.B. and asked them both to show him their breasts, and that S.B. did, but she did not. Mattox's
counsel then asked to present a motion outside the presence of the jury. The trial court excused the
jury, and counsel (1) asked for a mistrial because of her allegations about Mattox's actions toward
her, and then (2) argued that the evidence was more prejudicial than probative. The
objection/motion was overruled. 
            Shortly thereafter, the State asked C.H. whether there were any other instances in which
Mattox took inappropriate actions in the presence of her and the complainant. Counsel objected at
that point based on improper character evidence, and the objection was overruled. At that point, no
questions had been asked that would necessarily implicate improper character evidence, and thus the
trial court correctly overruled the objection. 
            The State then continued to question C.H., and in response to one of his questions about what
had happened while C.H. and the complainant were together with Mattox, she described a scene in
the complainant's bedroom where Mattox asked her for sexual favors in return for cigarettes and
money. Mattox did not object to that testimony. 
            After that exposition ended, the State then ask C.H. about another incident where Mattox had
driven her and the complainant to a lake. After the question was asked, and in the midst of the
answer, counsel objected because the testimony would constitute improper character evidence. The
objection was overruled, and C.H. completed her testimony by explaining how Mattox had again
asked her for sexual favors. The State referred to this testimony in its closing argument.
            Relevant evidence of a person's bad character is generally not admissible for the purpose of
showing that he or she acted in conformity with his or her character. Robbins v. State, 88 S.W.3d
256, 259-60 (Tex. Crim. App. 2002); Montgomery, 810 S.W.2d at 386-88 (op. on reh'g). In applying
the Texas Rules of Evidence, however, the Texas Court of Criminal Appeals has also held that the
evidence may be admissible when it is shown to be relevant to a noncharacter conformity issue of
consequence in the case, such as establishing intent or rebutting a defensive theory. Robbins, 88
S.W.3d at 259; Montgomery, 810 S.W.2d at 387-88.



            A trial court is in the best position to decide these admissibility questions, and appellate
courts therefore review its decision under an abuse of discretion standard. Montgomery, 810 S.W.2d
at 391. This standard requires an appellate court to uphold a trial court's admissibility decision when
that decision is within the zone of reasonable disagreement. See id. 
            In a number of cases, evidence about extraneous bad acts or offenses allegedly committed
by an accused has been held admissible to refute defensive theories raised by the accused. Wheeler
v. State, 67 S.W.3d 879, 886-87 & n.18 (Tex. Crim. App. 2002) (noting that "[e]vidence of
extraneous offenses committed by the accused has been held admissible . . . to refute a defensive
theory raised by the accused") (quoting Albrecht v. State, 486 S.W.2d 97, 101 (Tex. Crim. App.
1972); and referencing Crank v. State, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988) ("[p]robably
the most common situation which gives rise to the admission of extraneous offenses is in rebuttal
of a defensive theory")); see also Rodriguez v. State, No. 290-01, 2003 WL 1534250, at *11 (Tex.
Crim. App. Mar. 26, 2003) (Myers, J., dissenting).
            From the opening statements and throughout the testimony, Mattox's sole defensive theory
was that the complainant was not telling the truth about any sexual activities between them. The
reason suggested for her alleged lies was that she was angry about his version of parental discipline
and wanted to move in order to live with her biological father in South Carolina. Clearly, C.H.'s
testimony about the acts she observed between Mattox and S.B. were admissible to show that the
acts occurred. 
            C.H.'s testimony that Mattox had attempted to pay her to engage in similar acts and had
attempted on one occasion to unbutton her pants while she was in the complainant's bedroom are a
different issue. The State takes the position that this testimony tends to refute Mattox's defensive
argument that S.B. had fabricated her testimony.
            In reviewing the admissibility of this evidence, we are confronted by opinions that have
continually narrowed the scope of the rule and thereby broadened the range of evidence found to be
admissible. In Wheeler, in reviewing testimony by another minor girl, the Court found that her
testimony regarding an extraneous offense of sexual touching near other people was admissible to
rebut a specified defensive theory that Wheeler did not have opportunity to make such contact with
the alleged victim because he was never alone with her and the acts allegedly occurred while other
persons were around. Wheeler, 67 S.W.3d at 885. The Texas Court of Criminal Appeals also stated
that the evidence was admissible to rebut a "frame-up" theory by showing similar acts in a situation
involving neither money nor revenge as possible motives for her testimony. Id. at 887.



            This same defensive theory (lack of opportunity) was also used to validate the admission of
extraneous offenses in Powell v. State, 63 S.W.3d 435, 439 (Tex. Crim. App. 2001). In that case,
the court also found that it was acceptable to look to the opening statement by defense counsel to
glean the defensive theory and that evidence by other witnesses about alleged extraneous offenses
committed against them while in the company of other people was admissible to refute his argument
that he could not have committed the crime‒because other people were always around. Reversing
Powell v. State, No. 12-98-00049, 2000 WL 760988 (Tex. App.‒Tyler May 31, 2000, op. on reh'g)
(not designated for publication).
            The question before this Court is whether there is any viable, specific, defensive theory that
this testimony was relevant to rebut‒besides its relevance to show that Mattox acted in conformity
with his (bad) character. In Wheeler, the court held that one of its reasons for finding the testimony
admissible was that the complainant had been accused of fabricating the story in a conspiracy
designed to attempt to obtain money. Wheeler, 67 S.W.3d at 887. Therefore, the court reasoned,
the extraneous-offense testimony tended to contradict that theory by showing that other young girls
with no such motives had been similarly treated by the defendant.
            In this case, the defensive theory was that S.B. had concocted the story in an attempt to create
a situation where she could join her birth father in another state. If the testimony of C.H. rebuts a
specific defensive theory, such evidence of similar acts was admissible in order to show that, as in
Wheeler, other young girls with no such motive had been similarly treated. In making this
determination, we review the evidence presented regarding the defensive theory.
            In the opening statement, Mattox introduced the theme, "she wanted to live with him [her
birth father] because she had a freer lifestyle, and [he] let her do things she didn't get to do around
here." This continued to be developed with witness Eddie Waggoner, who was asked, "How about
if your mother thought that your real dad was a low down bad guy and he moved to another state and
you wanted to get back with him, . . . ?" In questioning S.B., he asked, "Did [your birth father] ever
talk to you about breaking up the family so that he could remarry [S.B.'s mother]?" Suzette Williams
testified that S.B. had said she was going to get the defendant in trouble by saying that he molested
her and that she wanted Williams to lie for her. S.B.'s aunt testified that S.B. had said she was lying,
that S.B. was just mad at Jess, and that S.B. was saying this to get even because of him being so strict
on her she wanted to live with her real dad. S.B.'s mother testified that S.B. told her that Jess did
not do anything and that she was mad at him for "interfering in her father's relationship." Her mother
also testified that S.B. had made up the lie because S.B. wanted to make her mother mad enough to
let her go to South Carolina. Mattox testified that S.B. said if he "didn't get off of her back that she
was going to go up and make the report that I was molesting her, . . . ." "I think that wanting to go
up to be with her real father is motive enough." 
            The primary defense to this case was that S.B. was lying and her motivation was to live with
her biological father. Mattox offered evidence on this issue from the child's mother and aunt. 
Additionally, three other witnesses were questioned on this subject, including the child. Mattox also
personally presented such evidence in his defense. Under these unusual circumstances, and applying
the requisite abuse of discretion analysis, we conclude the trial court's decision to admit the evidence
was within the zone of reasonable disagreement. Accordingly, error has not been shown. 
            Mattox also argues on appeal that, under Texas Rule of Evidence 403, the evidence was
unfairly prejudicial. See Tex. R. Evid. 403. However, except for the one instance set out
specifically above, he did not make that argument at trial. In connection with the shirt-raising
incident, the testimony was merely a part of the entire transaction and, as such, although it was
obviously prejudicial, we perceive no reason that it would be unfairly prejudicial. We therefore
conclude the trial court did not abuse its discretion by admitting the testimony.
            We cannot consider the other contentions in connection with the Rule 403 balancing test
because that complaint was not brought to the trial court's attention by a timely and proper objection
and, thus, the claimed error has not been preserved for our review. See Santellan v. State, 939
S.W.2d 155, 173 (Tex. Crim. App. 1997); Montgomery, 810 S.W.2d at 389. 
Britt's testimony
            Mattox also complains that the trial court abused its discretion by admitting the previously
described testimony of Donetta Britt in rebuttal. 
            Britt testified in her rebuttal testimony that she had been sexually assaulted by Mattox and
by two other men when she was twelve years old. Britt was twenty-three years old at the time of
trial. As discussed above, this testimony was admissible to rebut Mattox's defensive theory that the
complainant had fabricated her accusations so she could live with her biological father. 
            Counsel objected adequately that the evidence was inadmissible because its probative value
was substantially outweighed by its unfair prejudicial nature. We therefore turn to the question of
whether the court abused its discretion in admitting the evidence. Tex. R. Evid. 403; Montgomery
v. State, 810 S.W.2d 372, 392 (Tex. Crim. App. 1990) (op. on reh'g). In making this determination,
the trial court should "consider the inherent tendency that some evidence may have to encourage
resolution of material issues on an inappropriate basis and should balance carefully against it the host
of factors affecting probativeness, including relative weight of the evidence and the degree to which
its proponent might be disadvantaged without it." Fuller v. State, 829 S.W.2d 191, 206 (Tex. Crim.
App. 1992). A trial court's decision in balancing these factors is reviewed under an abuse of
discretion standard and is disturbed on appeal only when the trial court's decision falls outside the
zone of reasonable disagreement. Montgomery, 810 S.W.2d at 391-92.
            Tex. R. Evid. 403 carries with it a presumption that the evidence will be more probative than
prejudicial. Tennison v. State, 969 S.W.2d 578, 580 (Tex. App.‒Texarkana 1998, no pet.). In order
to be unfairly prejudicial, the proffered evidence must have a tendency to suggest a decision on an
improper basis. Perkins v. State, 902 S.W.2d 88, 99 (Tex. App.‒El Paso 1995), supplemented by,
905 S.W.2d 452 (Tex. App.‒El Paso 1995, pet. ref'd).
            In conducting the balancing test required by Rule 403, the trial court must assess the inherent
tendency, if any, of the evidence to encourage resolution of material issues on an improper basis,
balance against that inherent tendency the host of factors affecting probativeness, and then determine
whether the trial court's decision on that matter is outside the zone of reasonable disagreement. 
Richardson v. State, 879 S.W.2d 874, 880-81 (Tex. Crim. App. 1993); Fuller, 829 S.W.2d at 206.
            Those criteria include the following factors: (1) how compellingly the evidence serves to
make a fact of consequence more or less probable‒a factor that is related to the strength of the
evidence; (2) the potential the evidence has to impress the jury in some irrational but nevertheless
indelible way; (3) the time the proponent will need to develop the evidence; and (4) the force of the
proponent's need for this evidence to prove a fact of consequence, which breaks down into three
subparts: (a) Does the proponent have other available evidence to establish the fact of consequence
that the evidence is relevant to show? (b) How strong is that other evidence? and (c) Is the fact of
consequence related to an issue that is in dispute? See Montgomery, 810 S.W.2d at 389-90; Taylor
v. State, 93 S.W.3d 487, 506 (Tex. App.‒Texarkana 2002, pet. denied).
            Factor one: Evidence of a previous sexual assault concerning one who had no motivation
to lie, such as is alleged in this case, is probative. Britt had no motivation to fabricate the story,
which goes to the issue of rebutting the defensive theory that the complainant in this case had
fabricated her allegations. This factor weighs in favor of finding the evidence admissible.
            Factor two: The witness testified Mattox and two other men sexually assaulted her, when
she was twelve years old. In response to a question asking whether Mattox had taken inappropriate
sexual actions with her, she replied: 
Yes, he has. When I was in the 6th grade in school, him and two other men -- we
were -- the kids were -- and the men were all playing freeze tag (sic) because our
parents -- or the women parents had all went to town for something, and in the barn
him and two other men held me down and took their pleasure at my expense.
She then went on to confirm that Mattox had put his penis into her female sexual organ. She went
on, then, to testify about a second occasion: 
Whenever I was 17 -- or the night of my 17th birthday, he come into the middle
bedroom of my mom's house where I was laying down and asked -- brought a
condom and asked me to have sex with him, and he also offered me a car. And he
forced his self on me when I told him no. 

This testimony has a factual impact that cannot be disregarded. However, we also recognize that the
entirety of this testimony constitutes only two paragraphs of a 400-page record that covered a
four-day trial. We also recognize that the testimony is not the type of gruesome or graphic
description of the event that would most strongly tend to inflame the passions of the jury. Further,
this testimony is actually less graphic than the much more extensive testimony about the alleged
offenses for which Mattox was being tried. We conclude this was not necessarily evidence that
would tend to impress the jury in "some irrational but nevertheless indelible way" that could
materially impact its decision-making process. Accordingly, we find that, although this factor leans
in favor of excluding the testimony, it does not, standing alone, require its exclusion.
            Factor three: The time taken to develop the evidence was quite short. As mentioned above,
Britt's direct testimony about the extraneous offenses consumed only two paragraphs of the record,
and the entirety of her testimony, including cross-examination and redirect, covers only eight pages
of the record. This leaves little concern that the testimony diverted the jury from consideration of
the indicted offense. This factor falls in favor of admission.
            Factor four: Did the State need the evidence to prove a matter in dispute? The question at
issue was whether the complainant had fabricated her story about the attack‒as set out by testimony
from the complainant's other family members. As set out previously, the defense theory was that the
child had concocted the story from whole cloth in order to be able to leave Mattox's household and
rejoin her father. Further, her mother, aunt, and a friend, as well as Mattox, were taking the position
that she was lying. The Texas Court of Criminal Appeals has found that a similar defensive situation
involving a "small parade" of witnesses alleging that a complainant was lying justified admission
of extraneous offenses to support the State's position that the complainant had not fabricated her
story. Wheeler v. State, 67 S.W.3d 879, 889 (Tex. Crim. App. 2002). 
            The same situation exists here as with the other testimony, which we have previously
addressed. The primary defense was that S.B. was lying about even the existence of any sexual
activity and that her motivation to lie was so she could move to another state and live with her
biological father. This evidence attacking S.B.'s testimony from her friend, aunt, and mother has
previously been recited. We find this factor also weighs in favor of admission of the evidence.
            The evidence obviously makes it more likely that the presently alleged act occurred. The
question is whether the trial court could have decided within its discretion that the testimony about
the prior sexual attack in which Mattox participated was not unfairly prejudicial. 
            We conclude that, because the evidence was of an offense closely related in type to the
present offense, it tended to refute Mattox's theory that this complainant's testimony was fabricated.
The fact of consequence is thus related to an issue that was in substantial dispute in this prosecution. 
We therefore find the need for the extraneous offense evidence weighs toward admitting the
evidence.
            We conclude, based on all of these factors, that the trial court's decision to admit the
testimony of Britt was not outside the "zone of reasonable disagreement" and that the trial court
therefore did not abuse its discretion by allowing the evidence to be admitted.
Reopening the case
            Mattox finally contends the trial court erred by refusing to permit him to reopen his case to
present more evidence. After both sides had rested and closed, Mattox asked the trial court to allow
him to reopen his case:
                        [Mattox's Counsel]: Your Honor, we would ask to reopen.
 
                        THE COURT: Tell me about it.
 
                        [Mattox's Counsel:] We have five witnesses, four of them dealing
with this Britt lady, and one is dealing with an incident that [S.B.] had said she was
going to run away and escape, and we were going to talk about that she had a plan
and to go toward her ability to form a plan. A lot of the state's experts said she
couldn't do that.
 
            . . . .
 
                        THE COURT: Do I understand the state's objecting to this?
 
                        [Prosecutor]: We are objecting strenuously, Your Honor.
 
                        THE COURT: I'm going to sustain your objection and deny your
request.
 
                        [Mattox's Counsel]: We take exception.
 
            . . . .
 
                        [Mattox's Counsel]: Your Honor, I want to reurge the motion to open. 
One of the witnesses is going to testify how he was dressed when he went across to
get his sandwich at lunch on February 1st and 2nd.
 
            We review a trial court's refusal to allow a party to reopen its case-in-chief for abuse of
discretion. See generally Peek v. State, 106 S.W.3d 72, 72, 75 (Tex. Crim. App. 2003). A trial court 
must reopen a case under Article 36.02 of the Texas Code of Criminal Procedure "only if the
proffered evidence is 'necessary to a due administration of justice.'" Id. at 79 (quoting Tex. Code
Crim. Proc. Ann. art. 36.02 (Vernon 1981)). The Texas Court of Criminal Appeals recently
explained "due administration of justice" means the evidence sought to be introduced must be more
than merely relevant: "a judge should reopen the case if the evidence would materially change the
case in the proponent's favor." Peek, 106 S.W.3d at 79. 
            In the case before us, the record does not demonstrate the evidence sought to be introduced
during a reopening of Mattox's case would materially change the case in his favor. Under these facts,
Mattox has not shown the trial court abused its discretion by denying his motion to reopen.
            We affirm the trial court's judgment.
 


                                                                        Jack Carter
                                                                        Justice

Date Submitted:          June 20, 2003
Date Decided:             October 23, 2003

Do Not Publish