Affirmed and Memorandum Opinion filed September 25, 2003
















Affirmed and
Memorandum Opinion filed September 25, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-02-00621-CR

____________

 

JOHN SALVADOR REALE, JR., Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

_____________________________________________

 

On Appeal from
the County Criminal Court at Law No. 12

Harris County, Texas

Trial Court
Cause No. 1048785

 

_____________________________________________

 

M E M O R A
N D U M   O P I N I O N

            This is a driving-while-intoxicated
case in which appellant challenges the trial court’s denial of his motion to
suppress the State’s expert testimony regarding retrograde extrapolation of his
breath-test result.  We affirm the trial court’s
judgment.




                              I.  Factual and Procedural Background

            Appellant
was charged by information with misdemeanor driving while intoxicated.  Upon learning that the State planned to use
expert testimony regarding retrograde extrapolation of appellant’s breath-test
result, appellant filed a motion to suppress this evidence.  At the hearing on appellant’s motion,
appellant and the State agreed that the issues on the motion to suppress were
limited to whether the named expert, Ricky Viser, was
qualified to apply the theory of retrograde extrapolation and whether he
properly applied retrograde extrapolation to the issues in this case — that is,
whether Viser had sufficient factors under Mata to provide reliable testimony.[1]  For the purposes of the hearing, the parties
agreed to the following set of facts: 

(1)       Appellant weighed 215
pounds at the time of the offense;

(2)       Police
officers stopped appellant while he was driving at 3:54 a.m.;

(3)       Appellant
took a breath test at 4:52 a.m. that showed an alcohol
level of .082;

(4)       Appellant
took a second breath test at 4:55 a.m. that showed an alcohol
level of .081;

(5)       Appellant
had his first drink at 9:30 p.m. and his last drink at 2:00
 a.m.;
and 

(6)       Appellant ate pancakes
at 3:30 a.m. 

 

            Viser, who
was the only witness at the suppression hearing, testified as follows:

!         Viser has a bachelor of science
degree from Prairie View A & M University. 

!         Viser has worked as a technical
supervisor for the Houston Police Department’s breath-test program for seven
years.

!         As
part of his duties, Viser protects the integrity of
the breath-test program.

!         Viser is a certified technical
supervisor as well as a certified breath-test operator.

!         In the course of his training, Viser
has learned about the effects of alcohol on a person’s mental and physical
faculties.

!         At annual meetings of the technical supervisors, Viser has participated in tests in which men and women of
different weight and height are given different amounts of alcohol, breath
tests are performed on the subjects, and the technical supervisors perform
retrograde-extrapolation calculations on the test subjects.

!         Retrograde extrapolation is “a back estimation of a measured
amount of ethanol related back to the time of driving.”

!         In performing retrograde extrapolation, one must take into
account absorption and elimination.

!         Absorption describes the process by which a person takes
alcohol into his body and the alcohol is distributed throughout the body.  During absorption the alcohol concentration
is usually increasing.

!         Elimination is the process by which the body metabolizes the
alcohol in the liver.  During
elimination, the alcohol concentration is decreasing.

!         In performing retrograde extrapolation, one needs to have
some of the following factors: the time of the stop, the time of the test, the
amount of alcohol measured in the test, the subject’s gender and weight,
whether the subject had eaten, and the times of the subject’s first and last
drink.  

!         There are some risks of error with extrapolation; however,
the risk depends on the number of facts available.  

!         A subject with the stipulated characteristics of appellant
would have had a breath alcohol concentration from 0.09 to 0.10 at the time he
was stopped, if he was in the elimination phase at the time of driving.

!         A subject with the stipulated characteristics of appellant
would have had a breath alcohol concentration of 0.08 at the time he was
stopped, if he was in the absorption phase at the time of driving.

!         If a subject has recently eaten, the food tends to slow down
the rate of alcohol absorption into the body.

!         Viser used a constant 0.02 elimination rate in his
calculations.

!         The relevant literature indicates that a person’s
elimination rate may range from 0.0125 to 0.025 and that the average
elimination rate is 0.18; however, most experts use a 0.02 elimination rate,
which is equivalent to one drink per hour.

!         Based on the number of factors given in the hypothetical
concerning the stipulated characteristics of appellant, Viser
has a high degree of confidence in his calculation.  

!         A hypothetical 215-pound man would have an absorption rate
of 0.14 per hour.

!         Viser uses a standard elimination
rate but varies the absorption rate based on the characteristics of the
subject.  

!         Viser did not base his
calculations on the type of alcohol consumed or the number of drinks consumed.

!         Viser would take it into
consideration if the subject had consumed 10 ounces of grain alcohol and was
stopped an hour later.

!         The
quantity of alcohol consumed is a major factor.

!         The quantity of food consumed is irrelevant; however, the
presence and type of food are relevant.

!         Viser has done extensive studies in extrapolation.  

!         Viser does not believe he receives The Journal of Toxicology and Environmental Health.

!         The more food ingested by the subject, the more the food
will slow the absorption rate; however, Viser still
believes his calculations are reliable even if he does not know the amount of
food eaten because, if the subject ate food, he believes he can reliably take
the food into account, as long as he knows when the subject ate the food.  

!         Although two breath tests were taken, the results were
“pretty much the same.”

!         Viser believes the man in the
hypothetical, based on the stipulated facts regarding appellant, was in the
elimination phase, and Viser believes he can
determine whether a subject is in the elimination or absorption phase even if
he only has a single breath test.

!         Viser does not know the actual
amount of water that was in appellant’s body at the time in question; however, Viser took this into account based on average amounts of
water in men and based on appellant’s weight.

!         Retrograde extrapolation is not difficult; one cannot make
an exact prediction, but one can definitely estimate within reason.

!         Viser did not take appellant’s
mental state into consideration in making his calculation, and Viser believes mental state has nothing to do with this
calculation.

!         Even without knowing the amount of alcohol and food
ingested, and without knowing the subject’s drinking history or mental state, Viser believes he can establish an accurate rate of
absorption.

 

            At the conclusion of the suppression
hearing, the trial court denied appellant’s motion to suppress.  Under appellant’s agreement with the State,
appellant pleaded guilty with an agreed recommendation that punishment be
assessed at confinement in the Harris County Jail for three days and a fine of
$1,000.  The trial court assessed
punishment in accordance with the plea agreement and expressly permitted
appellant to appeal its denial of appellant’s motion to suppress.

                                                      II.  Issue and analysis

            Appellant’s sole issue on appeal is
whether the trial court erred in denying his motion to suppress.[2]  Appellant asserts that we should review this
issue de novo; however, under Mata,
we must apply an abuse-of-discretion standard of review.  See
Mata v. State, 46 S.W.3d 902, 908 (Tex. Crim. App. 2001).  In
determining whether the trial court abused its discretion, we consider whether
the court acted without reference to guiding rules and principles — that is,
whether the court acted arbitrarily or unreasonably.  Lyles
v. State, 850 S.W.2d 497, 502 (Tex. Crim. App.1993).  We
must uphold the trial court’s ruling so long as it is “within the zone of
reasonable disagreement.”  Wheeler v. State, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002).  

            In Mata, the Court of Criminal Appeals concluded the science of
retrograde extrapolation can be reliable in a given case.  See
Mata, 46 S.W.3d at 916.  The
retrograde-extrapolation expert’s ability to apply the science and explain it
with clarity to the court is a paramount consideration.  Id.  The expert also must show some understanding
of the difficulties associated with retrograde extrapolation as well as an
awareness of the subtleties of the science and the risks inherent in any
extrapolation.  Id.  Finally, the expert must be able to clearly
and consistently apply the science.  Id.

            In evaluating the reliability of
retrograde extrapolation this court also considers (a) the length of time
between the offense and the administration of the test(s); (b) the number of
tests given and the interval between each; and (c) to what extent, if any, the
individual characteristics of the defendant were known to the expert in
providing his extrapolation.  Id.  These characteristics and behaviors might
include, but are not limited to, the person’s weight and gender, the person’s
typical drinking pattern and tolerance for alcohol, how much alcohol the person
consumed on the day or night in question, what the person drank, the duration
of the drinking spree, the time of the last alcoholic drink, and how much and
what the person had to eat either before, during, or after the consumption of
alcohol.  Id.   

            The expert need not know every
personal fact about the defendant to produce an extrapolation with the
appropriate level of reliability.  Id.  If this were the case, no valid extrapolation
could ever occur without the defendant’s cooperation given that a number of
facts known only to the defendant are essential to the process.  Id.  The Court of Criminal Appeals has stated that
if (1) more than one test is administered at reasonable intervals, and (2) the
first test is conducted within a reasonable time of the offense, then an expert
potentially could create a reliable estimate of the defendant’s blood-alcohol
content with limited knowledge of personal characteristics and behaviors.  See id.  In contrast, a single test conducted some
time after the offense could result in a reliable extrapolation only if the
expert had knowledge of many personal characteristics and behaviors of the
defendant.  See id.  The Court of
Criminal Appeals has stated that a case would fall “in the middle” if the
expert is made aware of two or three of the defendant’s personal
characteristics and a single test was administered to the defendant within a
reasonable length of time from the traffic stop.  Id. at 916–17.


            In this case, Viser’s
testimony contained a few inconsistencies, but he explained the science with
sufficient clarity and sufficiently acknowledged the difficulties associated
with retrograde extrapolation.  The Court
of Criminal Appeals has indicated that, a reasonable interval between the
driving and the test is less than one hour. 
See Mata, 46 S.W.3d at
912.  Officers administered one test to
appellant 58 minutes after the driving and the other test 61 minutes after the
driving.  Although this length of time is
at the outer limit of what the Court of Criminal Appeals considered a
reasonable interval between the stop and the administration of the test, we
conclude that this still was within a reasonable time after appellant’s
driving.  See id.  Viser
based his extrapolation testimony on the following personal characteristics and
behaviors: (1) appellant weighed 215 pounds and was male; (2) appellant began
drinking at 9:30 p.m.; (3)
appellant finished drinking at 2:00 a.m.; and (4)
appellant ate pancakes at 3:30 a.m. 

            We note that the information
available to Viser far exceeded that available to the
expert performing the extrapolation in Mata.  The Mata
expert testified that he did not know how much the accused weighed, whether the
accused had eaten, or when the accused began or stopped drinking.  See
Mata, 46 S.W.3d at 905–06.  Unlike
the expert in Mata, Viser explained the science with sufficient clarity.  Viser also
sufficiently acknowledged the difficulties associated with retrograde
extrapolation.  Though Viser’s testimony contained a few minor inconsistencies, it
did not suffer from the type of glaring inconsistencies cited in Mata.  See id. at 906–07,
914–15.  In addition, the length of time
between appellant’s driving and the test was less than one hour, compared to
two hours in Mata, and Viser had several facts or personal characteristics that
the expert in Mata did not have.  See id.
at 905–06.

            The Court of Criminal Appeals has
indicated that two breath tests taken two minutes apart constitute only a
single reading that will not reflect whether a subject is in the elimination or
absorption phase.  See id. at 905, 909. 
However, Viser testified that he can determine
whether a subject is in the elimination or absorption phase even if he has only
a single breath test.  In any event, Viser’s testimony addressed both scenarios.  He gave an opinion regarding the breath
alcohol concentration of a subject with the stipulated characteristics of
appellant if such a subject were in the elimination phase and also if the
subject were in the absorption phase.  Viser’s claimed ability to determine whether a subject is
in the elimination or absorption phase based on a single breath test does not
make the trial court’s denial of appellant’s motion to suppress an abuse of
discretion.  Even if the two tests in
this case constitute a single reading, that reading was taken within a
reasonable time from the driving, and given Viser’s
knowledge of several pertinent facts or personal characteristics, this case
falls “somewhere in the middle.”  See id. at 916–17.  We hold that the trial court’s denial of
appellant’s motion to suppress was “within the zone of reasonable
disagreement,” and thus the trial court did not abuse its discretion in denying
this motion.  See Wheeler, 67 S.W.3d at 888; Mata, 46 S.W.3d at 916–17.  Accordingly, we overrule appellant’s sole
issue on appeal and affirm the trial court’s judgment.

 

                                                                        /s/        Kem Thompson Frost

                                                                                    Justice

 

Judgment rendered and Memorandum
Opinion filed September
 25, 2003.

Panel consists of Justices Yates,
Hudson, and Frost.

Do Not Publish — Tex. R. App. P.
47.2(b).

 

 











            [1]  See
Mata v. State, 46 S.W.3d 902 (Tex. Crim. App. 2001).





            [2]  On appeal, the State asserts appellant did
not present the same complaint to the trial court that he asserts on
appeal.  However, we hold that appellant
voiced the same complaint in the trial court and that appellant has
sufficiently preserved error.  See Tex.
R. App. P. 33.1(a).