

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-75,804-02

### Ex parte HANNAH RUTH OVERTON, Applicant

## ON APPLICATION FOR A WRIT OF HABEAS CORPUS
## CAUSE NO. 06-CR-3624-F IN THE 214TH DISTRICT COURT
## FROM NUECES COUNTY

**KELLER, P.J., filed a dissenting opinion in which KEASLER, J., joined.**

During applicant's trial, Dr. Michael Moritz's deposition was taken and videorecorded. The defense attorneys chose not to seek the admission of the deposition at trial. The Court says that this decision was not based upon any reasonable trial strategy. I disagree, because the habeas judge found and the deposition shows that there was a risk that the deposition would have opened the door to evidence that would have been profoundly damaging to the defense.

The State had two theories of criminal liability at trial: (1) that applicant poisoned the child A.B. with salt, and (2) that applicant failed to timely seek appropriate medical attention. Both theories were based on evidence that A.B. had ingested Zatarain's, which is a spicy seasoning mix with a high salt content. Applicant had an expert witness at trial who testified in response to these theories: Dr. Judy Melinek. Dr. Melinek testified for the defense regarding the possibility that A.B. consumed salt on his own due to a mental or emotional disorder, and she gave opinions regarding

the physical evidence that supported the defense theory that the death was not the result of abuse. Dr. Melinek also testified that the evidence did not show an undue delay in bringing the child to the hospital because the child's initial symptoms of stumbling, feeling cold, and vomiting were not necessarily sufficient to place a reasonable parent on notice that the child needed to go to the hospital and because the child's body temperature upon arrival at the hospital was fairly warm at 96.2 degrees.

Because applicant had the benefit of Dr. Melinek's testimony, Dr. Moritz's testimony was not essential to advancing a viable defensive case. Furthermore, much of Dr. Moritz's deposition testimony involved matters that were discussed at trial by Dr. Melinek. The Court's *Strickland* analysis entirely fails to take into account Dr. Melinek's testimony, neglecting to even mention that the defense had an expert witness at trial. Contrary to a proper *Strickland* analysis, the Court's opinion fails to take into account most of the State's evidence at trial, viewing Dr. Moritz's deposition only as it compared to Dr. Rotta's testimony instead of in the context of all of the evidence.

There is a part of Dr. Moritz's testimony that would have supplied an additional defensive theory for the jury to consider: the possibility that regardless of how the sodium was ingested, A.B.'s life could not have been saved by taking him to the hospital more quickly. But the defense could reasonably decide not to avail itself of this additional defensive theory if doing so would risk opening the door to evidence that was seriously damaging to the defense.

The habeas judge, who was also the judge at trial, cited this concern about opening the door to damaging evidence in support of his finding that the defense attorneys' conduct was not deficient. The habeas judge found credible Chris Pinedo's testimony that he was effective, but, instead of

focusing on Pinedo's articulated reasons for his conduct, the habeas judge focused on portions of the deposition. The habeas judge cited to a part of the State's cross-examination, where it became clear that Dr. Moritz did not review statements made by applicant's husband and children and where Dr. Moritz admitted that he would feel misled if there was a witness not provided to him who would testify that the child was punished by being forced to ingest salt. Based on this evidence, the court found that Pinedo was faced with the possibility that admission of the deposition would open the door to testimony that was harmful to the defense.

The State has supplied excerpts from interviews of two of applicant's children that show the basis for the State's questions at the deposition. One of the children stated: "Well, if I lie, I get pepper." When asked what that meant, the child responded, "Well, it's spicy stuff. It's spicy and it hurts your mouth, and you have to eat it and it hurts your mouth."[1] The other child stated that A.B. was punished with "pepper":

Q. Well, what happens to [A.B.] when he gets in trouble.

A. He gets pepper.

Q. Pepper? What happens with the pepper?

A. It was — His mouth will get hot.

Q. His mouth will get hot?

A. Yeah.

Q. Okay. Who gives him pepper?

A. My mom.

---

[1] When asked how much was administered for punishment, the child responded, "Like two peppers, like sprinkles."

The defense attorneys exerted significant efforts to keep out this evidence, and they were successful in doing so. This evidence was excluded at trial as hearsay, but it might have been admissible to rebut Dr. Moritz's opinions or at least for the purpose of questioning Dr. Moritz (as the State did at the deposition) about whether his opinion would change in light of this information.[2] Dr. Moritz admitted in the deposition that he had not seen any statements from the children and that eyewitness testimony that salt was used as punishment could change his opinion.[3] Eyewitness evidence from applicant's own children that "spicy stuff" was used as punishment could have devastated applicant's case in the eyes of the jury.

Evidence that applicant punished her children in this manner would have been relevant not only to the "commission" theory—that applicant was responsible for the salt poisoning in the first place, but also to the "omission" theory. Dr. Moritz's testimony that the child probably could not have been saved was based on his timeline estimating how long it would take a person to recognize how ill the child was and get him to the hospital and how long it would take the hospital to test and retest the blood before finding out why he was sick and beginning treatment. If the jury had been provided with evidence that applicant forced salty seasoning into the child's mouth, Dr. Moritz's timeline would have been undermined at both the front and the back ends: applicant would have recognized earlier what was causing A.B.'s symptoms, and she could have told the hospital immediately so that appropriate treatment could have begun right away.

---

[2] *See Wheeler v. State*, 67 S.W.3d 879, 884-85 & ns. 10-11 (Tex. Crim. App. 2002) (Keller, P.J., concurring); *Moranza v. State*, 913 S.W.2d 718, 727-28 (Tex. App.–Waco 1995).

[3] There was also testimony at trial that A.B. was covered in scratches and had sores from being forced to sleep on bare commercial-grade plywood. Dr. Moritz admitted that he had not been informed of this and that such evidence would be evidence of poor parenting and perhaps child abuse.

It is true that defense counsel did not articulate as a trial strategy the danger of opening the door. As the Court explains, Pinedo described the choice not to present the deposition as a product of the difficulty in editing the deposition around what he thought were the prosecutor's improper comments. Pinedo said that the deposition was "personally so messed up it could not be done" and "that the activity of the prosecution during the deposition of Dr. Moritz in my opinion rendered it useless." Pinedo claimed that the deposition was filled with interruptions, invalid objections, and dialogues that would render a transcript useless. He further stated that it appeared to him that the prosecutor was "purposefully trying to interrupt the deposition, in violation of ethical obligations."

I have watched the deposition video. The number of interruptions does not appear to be excessive—certainly not enough to impair the ability to present Dr. Moritz's opinions to a jury. And I find the claim that the prosecutor was somehow violating her ethical obligations to be baseless. Although Pinedo's articulated justifications for his conduct lack substance, the danger that Dr. Moritz's testimony would open the door to extremely damaging evidence was very real, and one that any reasonable attorney would have recognized. Given the efforts of the defense team to keep out this damaging evidence at trial, the habeas judge was within his discretion to believe that Pinedo was such a reasonable attorney and did not perform deficiently.

I respectfully dissent.

Filed: September 17, 2014
Publish