

**NUMBER 13-07-00366-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**RICARDO VILLA,**                                           **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                      **Appellee.**

---

**On appeal from the 319th District Court of Nueces County, Texas.**

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Wittig
### Memorandum Opinion by Justice Wittig[1]

Ricardo Villa, appellant, appeals his jury conviction of three counts of aggravated sexual assault of a child. Punishment was assessed at 99 years imprisonment plus a $5000 fine on each count. Appellant presents three identical

---

[1] Retired Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon Supp. 2004).

issues alleging erroneous admission of extraneous offenses involving three witnesses, Jose Ortiz, Juan Cantu, and Felix Moreno, during the trial in chief.  He claims error under rules 403 and 404(b) of the Texas Rules of Evidence.  *See* TEX R. EVID. 403, 404(b).  We affirm.

## 1. Background

The complainant, Jonathon Carrion was twenty-four at the time of trial.  Three instances of sexual assault began when he was 10.  Carrion met appellant while attending dance classes with his cousin, Natalie Barrera, at Villa's studio.  Carrion was then in forth grade.  Appellant picked up Carrion from his mother's work and took him to the Dance Center, where appellant worked and sometimes instructed Carrion.  On one occasion, when no one else was present at the studio, appellant told the complainant he could watch T.V.  Appellant joined him and then laid on top of Carrion's back, telling him it was good exercise.  Appellant instructed Carrion to massage his inner thigh, which Carrion did.  Appellant then asked Carrion to undo his pants so that he could get closer to the skin.  Appellant took off his underwear in the dark room.  Appellant then instructed Carrion to rub appellant's sexual organ with his hand.  Appellant then placed his organ into Carrion's mouth, moving it.  Afterward, appellant took Carrion to Wendy's and bought him ice cream and a meal.

A second incident occurred during a school break between fifth and sixth grades.  This incident was in another room at the dance studio, and began, as did the first incident, with appellant requesting Carrion to massage his leg.  Eventually,

appellant again had Carrion perform oral sex on appellant, until interrupted by a telephone call. Appellant again treated Carrion at Wendy's.

Carrion was not alone with appellant again at the studio. In the third incident, appellant pulled Carrion out of dance class and led him to a bathroom. Again, the episode began by a request for a massage of the inner thigh. Appellant instructed Carrion to kneel down and again engaged the boy with oral sex. The child made no initial out cry, but mentioned the incidences years later after his mother died.

## 2. Standard of Review

The admissibility of evidence is within the discretion of the trial court and will not be overturned absent an abuse of discretion. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). As long as the trial court's ruling was within the zone of reasonable disagreement, the appellate court should affirm. *Id. (*citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). Whether extraneous offense evidence has relevance apart from character conformity, as required by rule 404(b), is a question for the trial court. *Id.* An appellate court owes no less deference to the trial judge in making this decision than it affords him in making any other relevancy determination. *Id.* When a trial court further decides not to exclude the evidence, finding that the probative value of the evidence is not outweighed by the danger of unfair prejudice, this decision too shall be given deference. *Id.* Thus, the court of appeals cannot simply substitute its own decision for the trial court's. *Id.*

3

The appellate court should not conduct a de novo review of the record with a view to making a wholly independent judgment whether the probative value of evidence of "other crimes, wrongs, or acts" is substantially outweighed by the danger of unfair prejudice. *Id.* It should reverse the judgment of the trial court "rarely and only after a clear abuse of discretion." *Id.*

Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial. *Montgomery*, 810 S.W.2d at 389. If the trial court determines that evidence of "other crimes, wrongs, or acts" has relevance apart from character conformity, it should admit the evidence absent a further objection by the opponent of the evidence. It is then incumbent upon the defendant, in view of the presumption of admissibility of relevant evidence, to ask the trial court to exclude the evidence by its authority under rule 403, on the ground that the probative value of the evidence, assuming it is relevant apart from character conformity, is nevertheless substantially outweighed by the danger of unfair prejudice. *Id.*

If the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his correct ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

### 3. Extraneous Offense Testimony

Feliz Moreno, 37, testified that in mid 1985, he was at Villa's dance studio and told Villa that he wanted to dance. Villa asked Moreno if he wanted to help judge a

4

dance contest. Moreno was in the eighth grade and stated his age to be 14 or 15. Villa invited Moreno to a back room, wore a towel, and requested Moreno to massage his legs under the towel. Villa then asked Moreno to perform oral sex, which he did. On a second occasion, Moreno was again asked to massage Villa's legs in the genital area and again asked to perform oral sex, which Moreno refused. Villa masturbated while Moreno massaged Villa. The same thing happened on a third occasion when Villa's wife came into the room.

Juan Cantu, 23, testified he took dance lessons from Villa at the studio when he was ten years old. Villa took Cantu out of the class into a back room, laid down, and asked Cantu to massage his upper thighs. Cantu complied. Villa was clothed. When Cantu returned home, he told his mother who made a police report. Cantu did not return to the dance studio.

Father Jose Angel Ortiz, 37, testified he met Villa when he was 18, although he looked much younger. Villa met Ortiz at a bus stop. Ortiz indicated he was looking for a job and Villa invited Ortiz to go with him to see about an office cleaning job. Villa kept rubbing his inner thigh and talked about a soccer injury. They eventually parked in a back alley behind a mall. They then went to a back office, possibly at the dance studio. Villa told Ortiz he had pornographic adult movies, but not at his office. Villa invited Ortiz over and placed his hand on Villa's inner thighs. Villa then invited Ortiz to the floor and Villa took off his pants and Ortiz's pants. Villa performed oral sex on Ortiz and maneuvered his genitals over Ortiz's face. Ortiz

5

massaged Villa's sexual organ and placed it in his mouth.

## 4. Rule 404(b)

Appellant contends that the admission of the extraneous offense testimony of Cantu and Moreno was erroneous and was not relevant to rebut the defensive theory of fabrication and lack of opportunity or to show plan. Appellant also contends the extraneous offense testimony of Ortiz was erroneous and not relevant to rebut the defensive theory of fabrication and lack of opportunity. The State concedes that the testimony of Cantu and Moreno did not show a plan. Appellant argues that the mere challenge to credibility of the complainant does not open the door to extraneous offenses, citing *DeLeon v. State*, 77 S.W.3d 300, 313 (Tex. App.–Austin 2001, pet. ref'd.) (impeachment is not among the listed exceptions in rule 404(b); testimony admitted for impeachment purposes only is without probative value and cannot be considered as substantial evidence). Similarly, he argues the cross-examination must be sufficient to construct a defensive theory. *See Walker v. State*, 588 S.W.2d 920, 922 (Tex. Crim. App. 1979) (cross-examination of State's witnesses can raise the issue of identity but where cross-examination fails to impeach the witness, or only one of several witnesses is impeached in his identification, such cross-examination will not in itself support the introduction of extraneous transactions on the issue of identity). The cross-examination responses must undermine the State's testimony and place in controversy a fact that the testimony was offered to prove. *Crank v. State,* 761 S.W.2d 328, 341 (Tex. Crim. App. 1988).

In his cross-examination of the complainant, appellant sought to establish that the complainant took drugs, drank alcohol to excess, and made untrue statements about his allegedly abusive step-father. According to the cross-examination, the complainant told different "stories" about the sexual assaults to his various counselors. In one episode, where complainant was supposedly picked up at a Wal-Mart and taken to the dance studio of Villa for sex, the store did not exist or was not yet opened at the time of the assault. Counsel for appellant accused complainant: "Your story just didn't jibe." The defense developed discrepancies between what the complainant told investigator Michael Hess and a police report. The defense sought to establish that the complainant confused his sister's sweet sixteen birthday with her Quincenera (15th birthday celebration). Ultimately, defense counsel charged the complainant that the third incident in a "public" bathroom was "just a fabrication on your part."

## 5. **Fabrication**

Defense counsel challenged how a ten year old could remember "everything you remember." Virtually every detail related by the complainant was challenged, including the fact the lights were out. Defense counsel suggested it would be almost impossible to do or see anything during the bathroom incident. Counsel suggested, in effect argued, that with nine other students and nine parents around, the charged sexual assault was impossible. After the complainant's mother's death, his grades were bad and he went to counseling. The complainant was also suspended from

7

school. Defense counsel then argued, i.e. by leading questions suggested, that complainant's testimony about Villa's sexual advances, were an attempt to generate sympathy to get better grades. Furthermore, the complainant reported no problems until the 2005 time frame. Complainant never told his mother or sister about the episodes. Defense counsel accused the victim of using Villa "as a crutch." Counsel also charged the complainant tried to get back into school "with these allegations." Patently, the Villa defense was charging fabrication.

Appellant also argues from the intermediate court's holding in *Bass*, that a fabrication defensive theory standing alone (without other rule 404(b) purposes) is insufficient to permit introduction of extraneous offense evidence in rebuttal. *Bass v. State*, 222 S.W.3d 571, 578 (Tex.App.–Houston [14th Dist.] 2007), *rev'd & rem'd*., 270 S.W.3d 557 (Tex. Crim. App. 2008). The higher court rejected the distinction drawn by the intermediate court between a "fabrication" defense and a "frame up" or "retaliation" defense. *Bass,* 270 S. W. 3rd at 563. "The issue does not necessarily turn on the type of defense presented, but on whether the extraneous-offense evidence has noncharacter-conformity relevance by, for example, rebutting a defensive theory or making less probable defensive evidence that undermines an elemental fact." *Id.* (citing *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)); *Montgomery*, 810 S.W.2d at 387)).

Appellant likewise argues from a footnote to an unpublished case cited in *Dennis,* that mere cross-examination, without evidence of motive or a reason to lie,

8

is insufficient to introduce extraneous-offences.  *See Dennis v. State*, 178 S.W.3d 172, 178 n. 1 (Tex. App.–Houston [1st Dist.] 2005, pet. ref'd.).  The Houston court noted that the defendant did no more than attempt to impeach the victim's credibility–he did not argue that the defendant was framed.  *Id.*  The noted case held that the evidence was inadmissible because, "unlike the defendants in the child sexual assault cases the State cites, appellant never offered a motive or reason for the victim's purported lie." *Id.*  However,  in *Dennis*, the defense did more than merely impeach F.S.'s credibility, and thus opened the door to extraneous evidence of his prior sexual assault of a minor.  *Id.*  Likewise, appellant here did more than attempt to impeach the complainant, suggesting he had a motive to lie to his counselors in order to regain admission to college, impossibility, and an attempt to gain sympathy.

Appellant also cites *Bargas v. State*, 252 S.W.3d 876, 892 (Tex. App.–Houston [14th Dist.] 2008, no pet.).  There, the defendant offered both a motive  to fabricate the allegations and evidence, i.e. reason to lie, because the complainant was upset about living with defendant's temper and physical abuse.  *Id.*  Like *Bargas,* the appellant here did more than merely impeach credibility; through the responses elicited from Carrion and other witnesses during cross-examination, appellant opened the door to extraneous-offense evidence to rebut appellant's defensive theories of sympathy and an alleged attempt to regain college admission.  *See id.*

9

## 6. Opportunity

The defense also argued, through its questioning of several witnesses, lack of opportunity. Specifically, during the cross-examination of Natilie Barrera, defense counsel informed the trial court he was arguing "the circumstances wouldn't permit that to happen. It's just not practical to have happened." Again, during summation, defense counsel argued he could not believe Carrion went back for a third incident in a restroom that was pitch black and it was not reasonable that Villa would risk his entire business and reputation to sexually assault a boy in a public restroom where someone could walk in on him.[2]

In *Powell*, the court of criminal appeals discussed the lack of opportunity as a means of opening the door to extraneous offenses. *Powell,* 63 S.W.3d at 439. The defense witnesses suggested there was no opportunity for the sexual assault by Powell. *Id.* at 436-37. The court of appeals was reversed because it ignored the lack-of-opportunity defensive theory which was put forth during appellant's cross-examination of the complainant (in addition to opening statement.) *Id.* at 439. The trial court could have reasonably decided that the extraneous offense evidence at issue had noncharacter conformity relevance where it rebutted appellant's defensive theory that he had no opportunity to commit the offense because he was never alone with the complainant. *Id.* at 438. "It is at least subject to reasonable

---

[2] In his brief, appellant argues there were no responses to cross-examination that put into question both opportunity and that Villa enjoyed taking a risk of doing it in a place where he might get caught. This parsing ignores trial defense counsel's own words and argument. Additionally, appellant cites no authority for this argument. *See* TEX. R. APP. P. 38.1(c).

10

disagreement whether the extraneous offense evidence made this defensive theory less probable since this evidence shows that appellant molested other girls in the presence of others." *Id.* (citing *Montgomery*, 810 S.W.2d at 387).

In sum, it is also at least subject to reasonable disagreement whether the extraneous offense evidence was admissible for the noncharacter conformity purpose of rebutting appellant's defensive theories that the complainant fabricated his allegations against him in order for complainant to gain sympathy or to use as a stratagem to reenter school. *See Bass*, 270 S.W.3d at 563 (citing *Daggett v, State,* 187 S.W.3d at 453-54 (Tex. Crim. App. 2005); *Powell,* 63 S.W.3d at 438)). It is likewise subject to reasonable disagreement whether the extraneous offense evidence made these defensive theories less probable. *Id.* We hold that the trial court in this case could have reasonably concluded that the inherent probative force of appellant's extraneous bad acts was considerable, because the evidence tended to make more probable appellant's illicit sexual advances towards boys and a young man. *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). The trial court, therefore, did not abuse its discretion by deciding that the extraneous-offense evidence was admissible to rebut these defensive theories.

### 7. The Doctrine of Chances

The extraneous offense evidence was also admissible under Wigmore's "Doctrine of Chances." *See* 2 JOHN WIGMORE, EVIDENCE § 302, at 241 (Chadbourn rev. 1979). The "doctrine of chances" tells us that highly unusual events are unlikely

11

to repeat themselves inadvertently or by happenstance. *De La Paz*, 279 S.W.3d. at 347. As the court of criminal appeals explains, if A while hunting with B, hears the bullet from B's gun whistling past his head, he is willing to accept B's bad aim as a conceivable explanation; but if shortly afterwards the same thing happens again, and if on the third occasion A receives B's bullet in his body, the immediate inference (i.e., as a probability, though not a certainty) is that B shot at A deliberately; because the chances of an inadvertent shooting on three successive similar occasions are extremely small. *Id.* Here, Villa used a nearly identical modus of seduction of young boys for sexual favors in the incidences in question.

Similarly, the chance that a man innocently collects on his murdered business partner's insurance policy decreases significantly when it is learned that he collected on his murdered wife's insurance policy just three years earlier. *Id.* Modus operandi may also encompass the "doctrine of chances" theory to show lack of consent, motive, and the manner of committing an offense. *Casey v. State,* 215 S.W.3d 870, 881 (Tex. Crim. App. 2007).

## 8. Rule 403

Even if admissible, appellant challenges that the prejudicial effect out-weighs the probative value of each of the extraneous offense evidence. He cites *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). Appellant quotes extensively from *Gigliobianco*:

> The rule's first key phrase, "probative value," means more than simply relevance. *Old Chief v. United States*, 519 U.S. 172, 184, 117 S. Ct.

12

644, 136 L. Ed. 2d 574 (1997) (discussing Federal Rule 403). Rather, "probative value" refers to the inherent probative force of an item of evidence–that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation–coupled with the proponent's need for that item of evidence.

*Id.* To this, we add the court's next sentence, applicable here:

We explained in *Montgomery v. State,* 810 S.W.2d 372, 390 (Tex. Crim. App. 1990) (op. on reh'g), that "[w]hen the proponent [of an item of evidence] has other compelling or undisputed evidence to establish the proposition or fact that the [item of evidence] goes to prove, the [probative value of the item of evidence] will weigh far less than it otherwise might in the probative-versus-prejudicial balance.

*Id.* Here, the State had only the complainant's eye-witness testimony to the critical facts and that evidence was seriously tested by the defense's arguments and theories of fabrication and lack of opportunity. As the defense pointed out in the trial, the complainant made no outcry, and didn't tell his mother or his close sister. It was not until over a decade later, when in counseling for his mother's death and suffering bad grades, that complainant came forth with his charges against Villa. Understandably, the defense thus accused the complainant of fabrication for sympathy, to excuse his grades, and to seek readmission to college. Similarly, the defense claimed that Villa had no opportunity to molest boys in a "public" restroom, with the door open and lights off. The defense also argued Villa would not risk his reputation and business for underage sexual exploits. Therefore, the extraneous offense evidence to counter these defensive theories, (absent other compelling or undisputed evidence,) helped to prove both the possibility and probability of the charged offenses.

13

A successful conviction "often depends primarily on whether the jury believes the complainant, turning the trial into a swearing match between the complainant and defendant." *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). Appellant admits Carrion's credibility was the primary issue. At a minimum, the evidence provided a "small nudge" towards contradicting appellant's defensive theories and towards proving that the molestation did indeed occur. The testimony of Ortiz, Cantu and Moreno showed strikingly similar events to the charged event: the defendant coaxing young boys and one very young-looking youth to rub his inner thighs, then gradually coax them into intimate sexual acts. Thus, we disagree with appellant that the State does not get past the probative value factor.

Appellant goes on to argue and recite from *Gigliobianco:*

In summary, a trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice.

*Gigliobianco*, 210 S. W. 3rd at 641. He also argues that the extraneous offenses/bad acts did not directly relate to any fact of consequence, had many dissimilarities, two

14

were remote in time and were uncorroborated.[3] We have already noted that clearly an adult having sex with a ten year-old boy is a fact of consequence. The dissimilarities included the fact that Ortiz was eighteen at the time of his encounter and there was no teacher/student relationship. Moreno was fifteen and his encounters were "voluntary" and not submissive. Cantu was only a single incident which did not involve a sexual act, according to appellant. We do not agree that when Villa took the ten year old Cantu out of class, just as he did with Carrion, took him to a dimly lit back room and asked the child to rub his thighs, that there was no suggestion of sexual conduct or that Villa may not have been grooming Cantu for further sexual exploitation. Additional sexual advances were averted by Cantu's prompt report to his mother and her report to police. Villa's advances to Cantu exactly paralleled his advances on Carrion, also ten, at his dance studio.

The evidence showed that Ortiz looked much younger than his stated age of eighteen. Instead of exploiting the young man's interest in dancing, Villa used Ortiz's desire to work and make some money. The stratagem and enticement followed the same course of conduct as with Carrion and the other victims.

While Moreno was stated to be fourteen or fifteen at the time of his sexual episodes with Villa, he was only in eighth grade. Moreno too sought Villa's assistance in dancing. Villa enticed Moreno with an offer to help him judge a dance

---

[3] It seems somewhat contradictory to argue that evidence is inadmissable and at the same time complain there is not more evidence of corroboration. Further corroboration would necessarily include more evidence concerning the extraneous offenses.

15

contest. This "leading on" conduct was similar to, if not the same as, Villa used to coax the other boys into sex. He first asked Moreno to massage his thighs under a towel, then gradually persuaded the boy into further sexual activity. Moreno refused Villa's invitation to perform oral sex on the second and third occasions; Moreno stated his interest was to take up Villa's offer to judge a dance contest. This "quid pro quo" by the minor does not amount to the degree of voluntariness suggested by appellant.

First, we observe that evidence of the commission of other crimes by the accused is admissible as an exception to the general rule to rebut some defensive theory and, in cases such as sodomy, as evidencing the probability of the act charged and the unnatural attention toward the complaining witness, victim or accomplice. *Johnston v. State,* 418 S.W.2d 522, 527 (Tex. Crim. App. 1967). Next, as argued by the State, in *Wheeler*, the Texas Court of Criminal Appeals held that an extraneous offense may be admitted to rebut the defense that the defendant is the innocent victim of a frame-up if the extraneous misconduct is "similar to the charged one and an instance in which the 'frame-up' motive does not apply." *Wheeler v. State*, 67 S.W.3d 879, 887 n.22 (Tex. Crim. App., 2002). And in *Dennis*, the intermediate court observed that it had discovered no cases specifically discussing the degree of similarity required before an extraneous offense may be used to rebut the defense of fabrication. *Dennis*, 178 S.W.3d at 178. The Houston court held that while the similarity required to prove a "defendant's system" naturally

16

is higher, because the extraneous offense evidence is being used to show the defendant's distinctive and idiosyncratic manner of committing the criminal acts, it does not follow that an extraneous offense admitted to rebut the defensive theory of frame-up requires this same degree of exacting similarity between the extraneous and charged offenses. *Id.* at 179 (citing *Cf. Plante v. State*, 692 S.W.2d 487, 492-93 (Tex. Crim. App. 1985) (en banc) (holding that the high degree of similarity between extraneous and charged offense used in cases proving modus operandi is not required when purpose of proof is to show intent)).

Regarding the time issue, appellant states Villa's charged conduct occurred in 1993-1994 according to the evidence. The Moreno conduct occurred in 1985 and the Ortiz conduct in 1982. The State notes that appellant cited no authority for his complaints concerning time, or dissimilarities. The State also argues that there is no per se rule regarding remoteness of extraneous offense evidence. "We note that there is no per se rule as to when an extraneous offense is too remote in time to be introduced in evidence." *Corley v. State,* 987 S.W.2d 615, 620 (Tex. App.–Austin 1999, no pet.). The *Corley* court discusses remoteness ranging from two-and-a-half years to fifteen years. *Id.* It concluded that the period of time separating the extraneous transaction from the charge in chief is a factor to be considered, along with all other relevant factors, noting that in *Montgomery,* the "new rules favor the admission of all logically relevant evidence." *Id.* (citing *Montgomery*, 810 S.W.2d at 375). Earlier cases, tried under common law principles, before the new rules,

tended to favor exclusion of evidence. *Id.*

The court of criminal appeals allowed a ten-year-old extraneous offense noting: "We explained that sufficient similarity may be shown by proximity in time and place or by a common mode of committing the offenses." *Lane v. State,* 933 S.W.2d 504, 519 (Tex. Crim. App.,1996). We have already discussed the many similarities of Villa's sexual proclivities above. Given the similarities of action, place, and modus operandi, the time differential standing alone does not render the extraneous offense evidence irrelevant or lacking in probative value. *See id.* at 519-20.

Although appellant did not argue other elements of rule 403, we briefly address them. *See* TEX R. EVID. 403.

The trial court also could have reasonably concluded that the State's need for the other sexual conduct was considerable, because the State's prima facie case rested solely upon testimony of a ten year-old boy testifying some thirteen years later. *Gigliobianco,* 210 S.W.3d at 642.

The trial court could have reasonably concluded that the other sexual conduct did not have a tendency to suggest a decision on an improper basis. The defense even argues Villa's encounter with Ortiz was not illegal. And though the other sexual acts with a ten and fifteen year-old may have had some inflammatory effect, they "relate[d] directly to the charged offense." *Id.* The inflammatory effect, if any, does not outweigh the inherent probative force. *See id.*

18

The trial court could have reasonably concluded that the other sexual conduct did not have a tendency to confuse or distract the jury from the main issues in the case. *Id.* The presentation of the extraneous offenses consumed very little time at trial. And, because the testimony related directly to the charged offense, the jury would not have been distracted away from the charged offense regardless of the time required to present the evidence. *Id.*

The trial court could have reasonably concluded that the other sexual conduct did not have any tendency to be given undue weight by the jury. *See id.* This is particularly true given the trial count's admonishing instructions on the limited use of the testimony. *See Daggett,* 187 S.W.3d at 454-55. Here, the trial court admonished the jury that the evidence was introduced for the limited purpose of addressing defensive theories and was not admitted for the purpose of proving the character of Villa or that the defendant acted in conformity with that character.[4] We generally presume the jury follows the trial court's instructions in the manner presented. *Colburn v. State,* 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).

Finally, the trial court could have reasonably concluded that it was unlikely that presentation of the extraneous conduct would consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 642. Very little time was consumed in presenting the brief testimony of Ortiz, Cantu and Moreno.

---

[4] The court also instructed that before considering the evidence, the jury must believe it beyond a reasonable doubt and then only for the limited purpose for which it was admitted.

19

Although the Texas Rules of Evidence are intentionally slanted toward the inclusion of all relevant evidence, rule 403 gives the trial court considerable discretion to exclude evidence when it appears to that individual judge, in the context of that particular trial, to be insufficiently probative when measured against the countervailing factors specified in the rule. *Winegarner v. State*, 235 S.W.3d 787, 791 (Tex. Crim. App. 2007). The rule thus allows different trial judges to reach different conclusions in different trials on substantially similar facts without abuse of discretion. *Id.* We hold that the trial court properly balanced the competing interests of rule 403. *See* TEX R. EVID. 403. We overrule appellant's three issues.

We affirm the judgment and sentence of the trial court.

DON WITTIG
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 31st day of August, 2009.