1215-15    COVER PAGE

ORIGINAL

In the Court of Criminal Appeals
of Texas

FILED IN
COURT OF CRIMINAL APPEALS

NOV 18 2015

Abel Acosta, Clerk

Deric Williams, Appellant

v

The State of Texas Appelle

ON Petition for Discretionary Reveiw
From the Fifth District Court of Appeals
In 05-14-00567-CR Affirming The Conviction
on Cause No. F12-13693-L from Criminal
Court No.5 Dallas County, Texas

Oral Argument Requested

RECEIVED IN
COURT OF CRIMINAL APPEALS

NOV 16 2015

Abel Acosta, Clerk

Deric Williams, Pro se
1391 FM 3328
George Beto Unit
Tenn Colony Tx 75880
November 10, 2015

# Table of Contents

Table of Contents Pg 2
Index of Authurites. Pg 4
Statement Regarding Orel Argument Pg 3
Statement of The Case Pg 3
Statment of Procedurel History Pg 3
Ground for Review Pg 5

The Fifth District Court of Appeals has Substituted its own Judgement for That of The Trial Court And Therefore did not Strictly Hold the state To The Countours of That Ruling When The Discretion of that Court's Application of That Ruling is in question

## Question Presented

UPON EVIDENTIARY HEARING the trial Judge made A Ruling to Admit EXTRANEOUS Conduct Evidence of AN OFFENCE Neither Charged Nor Tried to Show Context. This Ruling WAS set At the breifest possible Mention of the EXTRANEOUS OFFENSE IS The Appeals Court bound PRECISELY to this Ruling or generally To This Ruling?

Factual Background    Pg 5

Argument    6,7,8

Prayer for Releif    Pg 9

Certifcate of Service    Pg 10

## Statement Reguarding Oral Argument ③

Oral Argument Would Assist The Court In This case on evaluating whether The court of Appeals Is bound To The Trial Courts Ruling

## Statement of the Case

This is on Appeal from the felony offense of Evading arrest In A Motor Vehicle. See Tx Penal Code Ann § 38.04. The Indictment Averred that Mr. Williams Evaded Arrest In Paragraph. 1. After 2 days of Trial The Jury Returned with A Verdict of guilty of The offense of Evading Arrest In A Motor Vehicle The Jury heard punishment Evidence And upon An Enhancement Sentenced him To 40 years Inprionment In The Texas Department of Criminal Justice Institutional Division Timely Notice of Appeal Was filed

## Statement of the Procedural History

On 8/18/15 In an Unpublished Openion, fifty District of Appeals Affirmed Mr. Williams Conviction Williams V State No. 05 1400567 CR

# Index of Authurites

## Rules Cited

Texas Rules of Evidence 403

Texas Rules of Evidence

## Cases Cited

Gigliobianco v State
210 SW 3d 637

Moses v State 105 S W3d
627.

De La Paz v State
279 S.W3d 336

## Statute Cited

V.T.C.A Penal Code § 38.04

## Ground for Reveiw

The Court of Appeals For the fifth District has Substituted its Judgment For that of The Trial Court And Therefore did Not Strictly hold The State To the Countours of that Ruling when Reveiwing the Discretion OF That court In its Evidentiary Ruling And Application

## Reason for Reveiw

The Court of Appeals for the fifth District Reformulates The Ruling by the trial Court In A broad Manner In Order To Suffice The Reasonable disagrement Restriction In on Abuse OF Discretion Analysis

## Factual Background Relevant To This Issue.

The Trial court Conducted A hearing In Response To the Defense Counsels objection About Evidence of an Aggravated Robbery Commited The Same Night as the Aleged Evading Arrest offense Following A breif hearing the Trial court granted The Appellant's Running objection And warned the State Not To overly Enphesize the aggravated Robbery facts Since doing So Could Cause undo Speculation by The Jury.

# Argument

The Court of Appeals for the fifth District Reveiwed The Appellants Texas Rules of Evidence 404 Violation claim under TRE Rule 403 in order To More Easily Affirm The Instant Conviction based upon its

Interpretation of The Probative Value of said Evidence. The Trial Court Itself Conducted A TRE 403 Analyers Doing a pretrial Evidentary hearing And Concluded That "The breifest possible Mention of The Prior offense" was in order. However, upon direct Appeal, The Court of Appeal Re-Weighed The Evidence Aduced At Trial under Gigliobianco V State 210 S.W. 3d 637 (Tx Crm App 2006) which is The balancing Two Used by Trial courts Themselves Here The Court of Appeals

has Erred by Not granting defence To the Ruling of The Trial Court by Modifying The Ruling stating; "The State generaly adheed To the Restrictions Imposed by The Trial Court." Per Texas Rule of Evidence And CCA Precident, The State should be strictly bound to the Trial Court's Ruling on direct Reveiw, See Mays V State 105 S W. 3d At 627 (Tx Crm App 2003) An Appellete Court owes No less Deference To The Trial Judge in making a decision Than it Affords him in Making Any other Relevancy determination... Thus, The Court of Appeals Cannot Simply Substitute its own decision for The Trial courts.

CLEARLY THE CCA REVEWING the TRIAL COURTS decision To admit or exclude EVIDENCE UNDER AN ABUSE OF discretion standard DE LA PAZ 279 S.W. 3d 336 (Tx CRm. APP 2009

A Trail Court does Not Abuse its discretion by Admittig EVIdENCE UNDER Rule 404) IF THE EVIdENCE shows That (1) EXTRANEOUS TRANSACTION is Relevant To A material NON- PROPENSITY ISSUE And (2) the probative Value of that EVIdence Is Not Substantially out Weighed by THE danger of unfair prejudice, CONfusion Issues or misleading The JURY DELAPAZ at 344. The Statutory Elements of EVAding ARREST ARE 1) A PERSON 2) INTENTIONALY) 3 FLEES 4) From A PEACE OFFICER 5) He KNOWS is Attempting To ARREST or detain him, VTCA PENAL Code § 38.04. The breifest possible MENtion" of Aggravated Robbery would only Establish The Content of why the Vehicle would be stopped, EVEN Though The WITNESS description of The vehicle was differant from the Vehicle Occupied by The Appellit. SEC RR 3 p.18. The EVIdence produced by The State's WITNESSES That WENT outside The Trial Courts Rulins Included, THERE WAS A hand gun iN the CAR" Calling oN Roshonda Bueks To Testify About That WEAPON. "Cash's Fast pace from The Shell Station And A large Amount of money IN "Cash's" LAP AND Testimony From 2 officers About The WEApon Involved in The Robbery. NONE OF This EVIdENCE is RElEVANT To ANY MATERAL ISSUE OF EVAding ARREST NOR does it have ANY probative

VALUE THEREFORE it WAS PREJUDICED. Through The Prompting And Manuvering of offering This Evidence, The Appellant decided To Testify on his own behalf AFTER Introduction by the state In Violation of This Court's Decision in Bass De LaPaz At 346. The appellant, PE Bass, Would have had to MAKE A general defensive Issue pertaining to the Robbery for the state To Introduce Testimony outside The Trial Courts Ruling which was Not the CASE. Upon Cross-Examination The state only Asked Appellant questions That only" pertain To The Robbery Such As The clothing of The Robbery Suspect, And where they parked At The Shell Station That was Robbed. Even At The Punishment phase of the Trial, The Robbery Victum Testified About his Life. being Robbed At gun point by A MAN IN A Ski MAsk who demaned his property. The Salient question is: IN This Abuse of discretion REVEIW UNDER De LA PAZ, Why was the Evidence IN question Not strictly bound to The trial Court's Actuel Ruling?

# PRAYER FOR RELIEF

For The Reasons Above, Mr Williams prays That This Court GRANT This petition

Respectfully Submitted

X Deric Williams

1391 Fm 3328

Tenn Colony Tx 75880

## Certificate of Service

I hereby Certify That A True And Correct Copy of The foregoing petition for Discretion-ary Review has been Served To the Texas Courts of Criminal Appeals in Austin Tx by Mail on the 10th day of November 2015

X _Deric Williams_____
DERIC WILLIAMS

The Courts having Examined The Cases by The State, The Court is going To Allow the breifest Possible Mention of the PRIOR offense, Just To show the Content In which the Current Crime Accured...

The state then, over The Trial Courts Ruling Immediately Introduced Evidence of the Aggravated Robbery: 1) Officer Chris Cooley, Although Not having An Accurate Description of The Vehicle, Emphati States that he had Information that A gun was Involved In the offense. He Next Testified that A handgun had been found on the floor board of the Vehicle In plan Sight. Next Officer Chris Malone, who Never Witnessed The Aggravated Robbery Nor the Evading Arrest, Testified That he was the first To Respond to the Shell gas station where the Robbery Took place. Even the Appellant himself upon Cross Examination was Asked question that pertained only To the shell gas station And The Aggravated Robbery Such As; How the other person were acking, what they were wearing where they were parked etc.

None of which pertain to evading arrest. Even at the punishment phase of the trial the store clerk, such like testified about the robbery and nothing more

Affirmed; Opinion Filed August 18, 2015.



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-14-00567-CR

### DERIC WILLIAMS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5
Dallas County, Texas
Trial Court Cause No. F12-13693-L

## MEMORANDUM OPINION

Before Justices Fillmore, Myers, and Evans
Opinion by Justice Myers

Appellant Deric Williams was convicted by a jury of evading arrest and detention with a

motor vehicle. The jury found the indictment's two enhancement paragraphs true and assessed

punishment at forty years in prison. In one issue, appellant contends the trial court erred by

admitting evidence of an extraneous offense. We affirm.

### BACKGROUND

The jury heard Corporal Chad Cooley of the Cedar Hill Police Department testify that on

the morning of November 30, 2012, at 7:00 a.m., he received a report of a suspected aggravated

robbery at a local gas station. Several callers reported seeing a silver and black Lincoln leaving

the scene of the offense after the suspect got in the passenger's seat. Corporal Cooley located a

vehicle that matched the description on the call and realized it was a Cadillac, not a Lincoln.

As he followed the vehicle, Corporal Cooley turned off his emergency lights and called

for backup because he was alone and he had received information that a gun was involved in the offense and multiple occupants were inside the vehicle. Corporal Cooley thought the driver of the vehicle, later identified as appellant, knew he was being followed because he tried to get off North Joe Wilson by turning onto a residential street that just made a circle and came back to the main road.

Before Corporal Cooley could reactivate his emergency lights, the vehicle started to accelerate. When it ran a stop sign, a traffic violation, the officer activated his lights and siren. Corporal Cooley estimated that, during this part of the pursuit, his patrol car and the suspect vehicle reached speeds of sixty miles per hour in a residential neighborhood. Appellant drove on the median, swerved onto the shoulder of the road, hit a trash can, and sped through the area. Appellant eventually reached the service road of U.S. Highway 67 and struck a red Mustang as he tried to force his way through an intersection. Corporal Cooley testified that, as the chase continued, he and appellant reached speeds of over 90 miles per hour on the highway and approximately 75 to 80 miles per hour on the service road.

At the intersection of the Highway 67 service road and Cockrell Hill Road in Duncanville, the vehicle struck a green Toyota Camry carrying a mother and her children. Appellant got out of the Cadillac and started running. The front passenger slid over to the driver's seat and drove away. However, the Cadillac, which had been damaged in the crash, eventually "gave out" when it reached Gannon Lane, and the two remaining occupants fled on foot.

Meanwhile, Corporal Cooley, assisted by Officers Lance Lehrman, Chris Malone, and several other officers that had responded to Corporal Cooley's call for assistance, pursued appellant as he jumped over the guardrail and ran down the embankment onto Highway 67. He made it to the median before he was caught. One of the officers tried to handcuff appellant but

–2–

he resisted, so Corporal Cooley tased appellant. After appellant was arrested he complained of head and neck injuries, so Officer Malone took him to Methodist Central Hospital for evaluation.

Officer Malone testified that on the morning of Friday, November 30, 2012, at 7 a.m., he was on duty when he received a call regarding a suspected aggravated robbery; he also received a description of the vehicle. The call indicated that the robbery had occurred at a Shell gas station and a "light bluish colored vehicle, possibly a Lincoln-type vehicle, maybe a Cadillac," had fled the scene. Officer Malone testified he was the first person to arrive at the Shell gas station. While he checked the area, he learned Corporal Cooley was following a vehicle that matched the description of the suspect vehicle. Officer Malone drove to the area to render assistance, eventually catching up to Corporal Cooley and joining the pursuit.

Cedar Hill Police Lieutenant Colin Chenault found the Cadillac where it had stopped, south of Interstate 20 on Gannon Lane. Lieutenant Chenault testified that he approached the vehicle with his weapon drawn, "ready to engage," because officers had been told that a weapon had been used in the offense. He noticed one of the occupants of the car, Roshonda Burks, was laying on the ground not too far away. Burks was treated by paramedics from the Dallas Fire Department, and Lieutenant Chenault led an unsuccessful search for the other occupant of the car, Craig Crayton. After taking appellant into custody, Corporal Cooley made his way to the Cadillac where he saw a gun laying in the driver's side floorboard next to a shoe that was stuck under the gas pedal.

Burks, the rear-seat passenger in the vehicle, testified she was in the car with two other individuals during the November 30 pursuit: Crayton, also known as "Cash," and appellant, who also went by the name "D." Burks recalled that appellant and Crayton picked her up at a gas station the night before in what she believed was a "gray" Cadillac with a black top. They rode around most of the night, talking and "getting high." The following morning, they stopped at a

Shell gas station and Crayton got out, saying he had to use the bathroom. Appellant and Burks remained in the car. Then, suddenly, Crayton came out of the gas station and got in the passenger side of the car, saying "go, go." Appellant and Burks saw that Crayton was holding some money, and appellant "just punched the gas and hit it." During the chase, Burks saw a gun in Crayton's lap facing appellant, and she heard appellant say, "It's going to be a high-speed chase today." After the crash, Burks saw appellant get out and run away, and Crayton "jumped in the driver's side and started driving and started weaving through the traffic, or whatever, and we ended up over there off of Gannon Lane." When they got out of the car, Crayton told Burks to take the gun, but she left it behind. Burks was hit by another car and laid on the ground until the police found her and she was taken to the hospital.

Appellant testified on his own behalf. He admitted driving the Cadillac during the chase, causing the wreck, and running from the crash scene. He said he drove to the Shell gas station in Cedar Hill because Crayton told him to. At the gas station, Crayton told appellant he was going inside to use the restroom. After about five or ten minutes, appellant saw Crayton "walking fast" out of the gas station. He got in the car and told appellant to drive off. As Crayton was giving him directions, they saw a police officer activate his lights. Appellant testified that he pulled into the residential neighborhood to get out of the officer's way. When the police car followed him, appellant said he asked Crayton, "[W]hat did you do?" Crayton responded, "Just go, man, just go." At that point, Crayton reached into his pocket, pulled out a gun, and set it on his lap pointed towards appellant. Appellant testified he did not mention the gun when talking to the police because he did not want them to think he was involved in the robbery. Appellant said he continued driving because he was scared Crayton would shoot him if he stopped, but he admitted Crayton never verbally threatened him. When he crashed into the green Toyota Camry and the Cadillac's airbags deployed, appellant said he got out of the car and fled on foot to get away

–4–

from Crayton. On cross-examination, appellant acknowledged he was on parole at the time of the offense, but he denied fleeing to avoid parole revocation. He insisted he had no idea what had happened inside the gas station.

## DISCUSSION

In his issue, appellant argues the trial court abused its discretion by permitting the State, over defense objection, to present testimony that the car in which appellant fled was suspected of being involved in an aggravated robbery. Prior to trial, the court held a hearing during which the State made the following argument for the use of this evidence:

> The defendant is alleged to have been driving a vehicle that was involved in an aggravated robbery. That is the reason why the police officers began following this vehicle.
>
> The state does not intend to get into any of the specific facts of the aggravated robbery, as the facts are not relevant to the charge of evading arrest, but contextually speaking, and I believe the courts allow this, there is some leeway into explaining why the person was being followed by the police, so we would ask that we are allowed to at least explain to the jury why he was being followed in the first place.
>
> Obviously, we're not going to get into any specific facts about the robbery, but we do get to at least go into that.

When the trial court asked the State how much detail it was planning to "get into," the State said, "Not very much at all. Just, basically, the phrase, aggravated robbery." After further discussion, the court asked, "So your communication to the Jury is going to be simply that the vehicle was involved in the case, not the defendant was a suspect in the case?" The State agreed with this assessment, stating, "That would be fine, Judge. I would say that. It was believed the vehicle was involved in an aggravated robbery, and that will be the end of it." The defense made the following objection:

> Your Honor, I would object to that type of information being in front of the Jury. I think that on it's [sic] face I think its probative value is outweighed for its potential for prejudice, especially in front of a jury when they're going to be sitting there thinking rather than evaluating the aggravated—or evaluating the

evading arrest, they're going to instantly—they will—from early on they will hear that the car is involved in an aggravated robbery, so naturally, I think the assumption would be that it's going to be that Mr. Williams committed the aggravated robbery, and they're going to think that, well, he's guilty of the aggravated robbery, or at least he did the aggravated robbery, when they don't know anything about the aggravated robbery, whether he was involved or not.

I think that it enables them to start to speculate too much, and then it becomes extremely prejudicial that they're going to then hold the aggravated robbery on him when they're evaluating the cases and evaluating him when they haven't even heard anything about it.

So I think it makes it difficult for the Jury to hear about this aggravated robbery when they're trying to judge this case for what it is, what they're here for under the indictment. I think it makes it really unduly prejudicial that they're going to then lump the aggravated robbery on to him.

The trial court asked counsel, "You don't think that the Jury would, without this information, speculate that it's a crime more serious than aggravated robbery, a drive-by shooting or hit and run, something like that, that's even more prejudicial to your client?" Defense counsel argued the jury could "speculate about anything" but the information should still be excluded because aggravated robbery is "pretty darned serious." The trial court held an off-the-record discussion, after which it made the following ruling: "The Court, having examined the cases described by the state, the Court is going to allow the briefest possible mention of the prior offense, just to show the context in which the current crime occurred."

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court does not abuse its discretion unless its decision to admit or exclude the evidence lies outside the zone of reasonable disagreement. *See Martinez*, 327 S.W.3d at 736; *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). We will uphold the trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *See De La Paz*, 279 S.W.3d at 344.

Only relevant evidence is admissible. *See* TEX. R. EVID. 402.[1] Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Rule 404(b) provides that evidence of an accused's "other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). Evidence of extraneous acts "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" *Id.*

The exceptions listed in rule 404(b) "are neither mutually exclusive nor collectively exhaustive." *De La Paz*, 279 S.W.3d at 343. "The proponent of uncharged misconduct evidence need not 'stuff' a given set of facts into one of the laundry-list exceptions set out in Rule 404(b), but he must be able to explain to the trial court, and to the opponent, the logical and legal rationales that support its admission on a basis other than 'bad character' or propensity purpose." *Id.*

The State argues that the testimony regarding the aggravated robbery was admissible because it was same transaction contextual evidence. *See Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (en banc). Evidence of another crime, wrong, or act may be admissible as same transaction contextual evidence when several crimes are intermixed, blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony of any one of them cannot be given without showing the others. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). The purpose of admitting extraneous evidence as same transaction contextual evidence is to place the instant offense in context. *Nguyen v. State*,

---

[1] Effective April 1, 2015, the Texas Supreme Court adopted amendments to the Texas Rules of Evidence. *See* 78 TEX. B.J. 42, 42 (Tex. 2015). The amendments were part of a restyling project that changed the wording, although not the substance, of the rules cited in this opinion. All citations to the rules of evidence in this opinion refer to the rules as they existed during the parties' trial.

177 S.W.3d 659, 667 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). "[I]t has long been the rule in this State that the jury is entitled to know all the relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986). Same transaction contextual evidence is admissible as an exception under rule 404(b) when the offense would make little or no sense without also bringing in that evidence, and to the extent it is necessary to the jury's understanding of the offense. *Devoe*, 354 S.W.3d at 469.

In this case, the trial court could have concluded that the reported aggravated robbery was inextricably interwoven with the car chase that followed. The aggravated robbery explained why Crayton told appellant to drive so fast and why appellant tried to run from the police after his vehicle crashed into the Toyota. The aggravated robbery also explained why the police engaged in a high speed pursuit of appellant's car through a residential area. The charged offense, in other words, would have been much more difficult to explain to the jury without referring to the reported aggravated robbery that first brought appellant's vehicle to the police's attention. There is also the possibility that, had there been no mention of an aggravated robbery, the jury, as the trial court observed, would have speculated that the offense was more serious than aggravated robbery. Based on this record, the trial court could have reasonably concluded the complained-of evidence was admissible as same transaction contextual evidence.

But evidence that is admissible under rule 404(b) may nonetheless "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403; *Mozon v. State*, 991 S.W.2d 841, 846–47 (Tex. Crim. App. 1999). When undertaking a rule 403 analysis, the trial court must balance: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that

evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 640–42 (Tex. Crim. App. 2006) (identifying six factors to be balanced under rule 403 but recognizing "these factors may well blend together in practice"); *see also Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App. 2005) (identifying four non-exclusive factors for rule 403 balancing test).

A judge is presumed to have engaged in the required balancing test once rule 403 is invoked. *See Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997) (citing *Santellan v. State*, 939 S.W.2d 155, 173 (Tex. Crim. App. 1997)). Rule 403 favors admissibility and "the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991); *see also De La Paz*, 279 S.W.3d at 343. As with rule 404, a trial court does not abuse its discretion when it admits or excludes evidence pursuant to rule 403 so long as its decision is within the zone of reasonable disagreement. *See De La Paz*, 279 S.W.3d at 343–44.

Regarding the rule 403 factors, the first two factors favor admissibility because the evidence placed the charged offense in context for the jury and it showed why the vehicle appellant was driving first came to the police's attention. The State's need for the complained-of evidence was substantial because, without it, the jury would have been left to speculate why appellant ran from the police and why they engaged in a high speed pursuit of appellant's car through a residential area. It is also possible that, without the extraneous offense evidence, the jury would have conjectured that the offense was more serious than aggravated robbery. As for

—9—

the third factor, the prejudicial impact was minimal and the extraneous offense evidence was not so inherently inflammatory that it should have influenced the jury in "some irrational but indelible way." *See Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002). The fourth and sixth factors concern the tendency of the evidence to confuse or distract the jury from the main issues and the amount of time consumed by the presentation of the extraneous offense evidence. *See Gigliobianco*, 210 S.W.3d at 641. These factors likewise favor admissibility because the extraneous offense evidence was relatively brief in nature and did not take a significant amount of time at trial to develop. Moreover, the testimony generally adhered to the restrictions imposed by the court that limited the State to "the briefest possible mention of the prior offense." The officers did testify that they were pursuing a vehicle that was suspected of being involved in an aggravated robbery, but they did not testify regarding the details of the offense. The testimony provided by Burks was more specific, but she also suggested appellant had nothing to do with the robbery. In addition, Detective Brandon Woodall spoke to appellant at the hospital and the police station, but the State did not elicit any testimony from the detective regarding the aggravated robbery. Therefore, contrary to the suggestion in appellant's brief, the complained-of evidence was neither "overblown" nor "over-emphasized." The fifth factor concerns a tendency of an item of evidence to be given undue weight by a jury that has not been properly equipped to evaluate the probative force of the evidence. This factor concerns "a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds. For example, 'scientific' evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence." *Id.* (citation omitted). The extraneous offense testimony was not prone to such a tendency, as it concerned matters easily understandable by a jury. Thus, the fifth factor also weighs in favor of admission. For all of these reasons, then, we conclude the probative value of the extraneous offense evidence was not substantially

outweighed by the danger of unfair prejudice or any other rule 403 concerns. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641–42. We overrule appellant's issue.

We affirm the judgment of conviction.


/ Lana Myers/
LANA MYERS
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
140567F.U05

–11–



# Court of Appeals
## Fifth District of Texas at Dallas
# JUDGMENT

DERIC WILLIAMS, Appellant

No. 05-14-00567-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 5, Dallas County, Texas
Trial Court Cause No. F12-13693-L.
Opinion delivered by Justice Myers. Justices
Fillmore and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 18th day of August, 2015.

Deric Williams 1929599
1391 FM 3328
George Beto Unit
Tenn Colony Tx 75860

Legal Mail

Abel Acosta
Court of Criminal Appeals of Tx
12308 Capitol Station
Austin, Tx 78211

Legal Mail